STATE of Missouri, Respondent,

v.

Stacy NEVERLS, Appellant.

No. 49346.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 10, 1985.

Motion for Rehearing and/or Transfer
Denied Jan. 7, 1986.

Bert L. Gates, St. Louis, for appellant.

William L. Webster, Atty. Gen., Mary Elise Burnett, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Presiding Judge.

Defendant, Stacy Neverls, was prosecuted on a charge of assault in the first degree. The jury returned a verdict finding him guilty of the lesser included offense of assault in the second degree. He appeals from the judgment of the trial court sentencing him to a term of imprisonment for five years. We affirm.

Defendant does not challenge the sufficiency of the evidence. The jury reasonably could have found from the evidence that during the evening of January 30, 1984, the victim was returning home from work in her automobile. As she was parking the car in front of her home, she honked the horn. At that moment a car pulled up beside her. Defendant, a man who previously had lived with the victim for approximately four years, shot at her with a revolver. The victim ducked down, and then pulled away from the curb and drove down the street. Defendant followed her in his car for about four blocks until she pulled into a service station. Defendant testified at trial and offered an alibi as his defense.

Defendant first contends that the trial court erred by admitting medical records of

the victim into evidence. He argues that the State violated Rule 25.03 by untimely disclosure of the records. The records pertained to the victim's treatment at two hospitals for an injury resulting from the assault. Defense counsel served a standard request for discovery on the prosecutor seeking, *inter alia*, "Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons." Rule 25.03(A)(5). The prosecutor did not receive the medical records until the evening after the first day of trial when voir dire had been completed but the jury had not been sworn. He called defense counsel on the telephone that night and read the contents of the medical records to him. The next day, the second day of trial, he gave defense counsel copies of the records.

The medical reports revealed that the victim had two metallic fragments in the soft tissue of the left parietal region of the skull. The trial judge ordered the word "bullet" deleted from the prosecutor's reading of the hospital records to the jury. Over objection, the trial judge permitted the State to qualify the reports as business records and to introduce them into evidence.

■ The medical records were subject to disclosure by the state pursuant to Rule 25.03(A)(5). The purpose of the discovery process is to avoid surprise and to permit a defendant to properly prepare for trial. *State v. Williams*, 679 S.W.2d 915, 918 (Mo.App.1984). Although the prosecutor apparently experienced considerable difficulty in obtaining the reports from the hospitals, disclosure of the records on the second day of trial violates the spirit, if not the letter, of the discovery rules. The issue is whether the trial court erred in failing to impose the most severe sanction for violation of the discovery rules by excluding the evidence in accordance with Rule 25.16.

■ The trial judge has wide discretion in determining what sanction, if any, to impose. *State v. Williams*, 679 S.W.2d at 918. The question is whether the late disclosure of the evidence resulted in a fundamental unfairness or prejudice to the defendant. *State v. Gormon*, 584 S.W.2d 420, 423 (Mo.App.1979). Fundamental unfairness is gauged by whether the evidence or discovery thereof would have affected the outcome of the trial. *State v. Mansfield*, 668 S.W.2d 271, 273 (Mo.App.1984).

■ When defense counsel had prior knowledge of the State's possession of evidence, it is difficult to imagine that the introduction of that evidence at trial came as any shock. *State v. Sykes*, 628 S.W.2d 653, 657 (Mo.1982). Disclosure of evidence shortly before trial does not result in fundamental unfairness as long as the defense is given adequate opportunity to review such evidence before its introduction. *See State v. Bailey*, 672 S.W.2d 682 (Mo.App. 1983).

In the present case, defense counsel knew of the existence of the hospital records before the trial began. The prosecutor had informed him that the records had been requested and would be forwarded to him as soon as they were received. Defense could have anticipated that the prosecutor would use them if they were favorable to the State's case. Although defense initially was unaware of their content, the existence of the medical records alone would have indicated that the victim had sustained some physical injury when someone shot at her, particularly when two trips were made to different hospitals within a short time after the shooting. After receiving the records, but before introducing them into evidence, the prosecutor read the medical reports to defense counsel over the phone and furnished him with copies as soon as possible.

Despite the fact that defense counsel had not seen the requested reports, he proceeded to trial without objection. *See State v. Sykes*, 628 S.W.2d at 657. When the reports were finally disclosed, the only sanc-

tion requested was exclusion of the evidence. There was no request for a continuance to study the reports or to interview the witnesses. *Compare State v. Merrick,* 677 S.W.2d 339, 342 (Mo.App.1984). There was no request for a mistrial. *Compare State v. White,* 621 S.W.2d 287, 294 (Mo. 1981). Defense counsel's trial strategy was to attempt to prevent the introduction of the medical records into evidence.

■ There is no indication of how the defendant was prejudiced by the late disclosure of the medical records. Based upon the record before us we fail to see how the admission of the medical reports resulted in a fundamental unfairness to defendant. Defendant's first point is denied.

Defendant's second point alleges error in the admission into evidence of the victim's testimony that there was a bullet fragment in her head.[1] Defendant asserts that testimony as to the presence and identity of the metallic fragments was inadmissible as hearsay. "Hearsay evidence is in-court testimony of an extra-judicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant." *State v. Harris,* 620 S.W.2d 349, 355 (Mo. banc 1981).

Here, it can be inferred that someone out of court informed the witness that she had bullet fragments in her head. It is not information that she could obtain on her own. This testimony tended to prove that there were indeed bullet fragments in her head.

■ The State's argument that the answer was not hearsay because it was offered to explain the victim's reason for going to the hospital and not to prove that there were bullet fragments in her head, is without merit. The explanation given by the in-court witness goes far beyond an explanation of her subsequent conduct. *Compare State v. Ashley,* 616 S.W.2d 556, 561 (Mo.App.1981). Permissible testimony would have been that she went to the hospital for further examination or treatment or for an x-ray of her skull. The statement that she had a bullet fragment in her head was clearly inadmissible hearsay. The error is further exacerbated by the fact that it includes an opinion of the out-of-court declarant that the metal-like fragment observed in the x-ray was in fact a bullet fragment. We therefore conclude that the trial court erred in admitting the statement.

Next, we determine whether the error was prejudicial. Appellate intervention is mandated only if the trial was unfair, not if it was imperfect. *State v. Smith,* 534 S.W.2d 604, 608 (Mo.App.1976). Error that is found to be harmless beyond a reasonable doubt is not grounds for reversal. *State v. Miller,* 664 S.W.2d 229, 231 (Mo. App.1983).

■ Turning to the specific evidence in this case, we find no prejudice. The portion of the medical reports that was properly admitted into evidence indicated the presence of metallic fragments in the skull of the victim. The difference then between the objectionable testimony of the victim and the properly admitted portion of the medical reports was the term "bullet." Other evidence before the jury, however, negated the impact of the use of that word. There was substantial evidence that the defendant shot at the victim. Spent .38 caliber or 9 millimeter shell fragments were found in the rear seat of the victim's

---

1. The victim testified as follows:

Q. Why did you go to St. Luke's

A. Because after Central Medical Center had put the stitches in my head, then they x-rayed me and there was fragments.

　　＊　　＊　　＊　　＊　　＊　　＊

A. I went to St. Luke's because after CMC stitched up my head that was when they decided to take x-rays and found out that there was a bullet fragment in my head.

After each of these statements, defense objected on hearsay grounds. The objections were overruled both times.

car; the glass in the window of the driver's side of the automobile was shattered onto the seats inside the car; the victim sustained a scalp laceration; and x-rays revealed metal-like fragments in the scalp. Use of the term "bullet" did not add that much more to the facts already in evidence. The victim's description of the metallic fragments as a "bullet fragment" did not affect the result of the trial. Defendant's second point is denied.

Defendant's third and fourth points allege error in the admission of victim's testimony that she had previously obtained a restraining order against defendant under the Adult Abuse Act and that she and her family had been threatened and harassed by defendant. This testimony was elicited by the State on redirect examination. Defense objected on the grounds of relevancy and evidence of other crimes.

The scope of redirect examination of a witness is within the sound discretion of the trial court and we review only for an abuse of that discretion. *State v. Ward,* 682 S.W.2d 124, 126 (Mo.App.1984). A witness may be properly interrogated on redirect examination as to any matter which tends to remove inferences or suggestions which might have arisen during testimony on cross-examination. *State v. Ratliff,* 633 S.W.2d 267, 271 (Mo.App.1982). When a party cross-examines a witness about certain conduct, the door is opened for that witness to give the reasons for such conduct on redirect. *State v. Gaskin,* 618 S.W.2d 620, 625 (Mo.1981).

Here, defense brought out on cross-examination that it was customary for the victim to honk the horn of her automobile when she pulled up in front of her house and that the victim's earlier problems with defendant caused her to be biased in her identification of him as her assailant. Once defense opened the door on these subjects, the prosecutor was entitled to develop them in the redirect examination. The victim could explain that her reason for honking her horn was to summon her son to watch her walk safely from her car to the house. She could also give the details of her earlier problems with defendant. The trial court did not abuse its discretion in permitting these subjects to be expanded on redirect. Defendant's third and fourth points are denied.

The judgment of the trial court is affirmed.

KELLY and PUDLOWSKI, JJ., concur.