**STATE of Missouri, Plaintiff-Respondent,**

v.

**Vicki BARNES (Ousley), Defendant-Appellant.**

**No. 14459.**

Missouri Court of Appeals, Southern District, Division One.

Nov. 5, 1986.

William L. Webster, Atty. Gen., Paul La-Rose, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Donald R. Cooley, Springfield, for defendant-appellant.

WILLIAM H. CRANDALL, Jr., Special Judge.

Defendant, Vicki Barnes (Ousley), appeals from her conviction, after jury trial, of promoting prostitution in the third degree, § 567.070,[1] a class D felony, in that she knowingly provided premises for prostitution purposes. Vicki was fined $5,000 and sentenced to three years' imprisonment. We affirm.

We first consider defendant's second point which, in essence, challenges the sufficiency of the evidence to sustain the verdict. Considering the evidence and reasonable inferences drawn therefrom, in the light most favorable to the state, the record discloses that "Sunnie's Companionship" (Sunnie's) was a business purporting to offer "entertainment-service-companionship." It operated out of a trailer in Joplin, Missouri.

On November 26, 1984, B____ C____, a prostitute turned paid police informant, went to Sunnie's on the pretext of seeking employment. There were approximately six women in Sunnie's. When B____ C____ questioned the possibility of obtaining employment, she was told that no jobs were available at that time. After she filled out

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

an application, one of the women ushered B____ C____ to a back room and asked her to remove all of her clothing. When she was undressed, defendant came into the room to talk to her. B____ C____ had not seen defendant up until this time. Defendant asked B____ C____ what kind of work she had done previously and B____ C____ responded that she had performed certain sexual acts for money. Defendant then asked if B____ C____ wanted to make money doing those same acts for her. When B____ C____ answered in the affirmative, defendant told her to call back on the following Wednesday.

On the evening of November 29, 1984, D____ R____, working undercover for the Jasper County Sheriff's Department, went to Sunnie's. Four women were there. When D____ R____ asked about female companionship, he was told that the price was $40; that he should pick the woman he wanted; and, that he would be "satisfied" when he left. A woman led him into a small room with a bed and told him to remove his clothes and to "get comfortable." She then proceeded to engage in sexual acts with him. During this visit to Sunnie's, D____ R____ did not see defendant. He had asked, however, about a girl named Vicki, and had been told that she was not working that evening.

The state introduced into evidence sales tax returns and an application for a retail sales license for Sunnie's. Each exhibit bore the signature either of Vicki Barnes or of Vicki Ousley, defendant's married name. The state also introduced into evidence records from the local electric company which also bore the name of Vicki Barnes; an application for commercial service; and, an application for outdoor lighting at Sunnie's. The custodian of the records for the electric company testified that he did not take the applications and, consequently, was unable to identify defendant as the person who had applied for electric service. The social security number on the sales tax records was identical to that listed on the electric company's records.

Defendant was charged with knowingly providing the premises for prostitution. B____ C____ testified that she was interviewed, in the nude, by defendant at Sunnie's and asked if she would be willing to perform certain sexual acts for money. D____ R____ testified that he received sexual services at Sunnie's for money. From the evidence and inferences therefrom, a jury could reasonably have concluded that prostitution was taking place at Sunnie's and that defendant knew that it was.

The exhibits bearing the name Vicki Barnes indicated that defendant was the owner of the business known as Sunnie's and that she was primarily responsible for running the operation. Defendant's interview of B____ C____ was also consistent with the responsibilities of a manager of Sunnie's.

■ At trial and on appeal, defendant argues that there was no evidence linking the name on the records to her. Although there was no testimony that defendant signed the documents in question, the name on the records was at least circumstantial evidence that she was, in fact, the person whose name appeared on the exhibits. Circumstantial evidence need not exclude every adverse possibility. *State v. Jenkins,* 516 S.W.2d 522, 525 (Mo.App.1974). Here, all the records bore defendant's name. From identity of name, identity of person may be presumed. Id. Several exhibits also contained the same social security number. Further, all of the exhibits pertained to running the business at Sunnie's; and, there was other testimony that defendant was involved in the management of that enterprise. The trial court did not err in overruling defendant's motion for judgment of acquittal. The evidence and the reasonable inferences therefrom support a finding that defendant was providing the premises for prostitution purposes. Defendant's second point is denied.

■ Returning to defendant's first point, she avers error in the trial court's refusal to submit her proffered instruction on circumstantial evidence. However, her motion for new trial made no reference to the

instruction. Any error relating to the failure to give a circumstantial evidence instruction, therefore, is not preserved for appellate review. Rule 29.11(d); *see also State v. Moseley,* 705 S.W.2d 613, 617 (Mo. App.1986). We have reviewed for plain error, and find no manifest injustice or miscarriage of justice. Rule 30.20. Defendant's first point is denied.

In her final point, defendant contends that the trial court erred in admitting the records from the Missouri Department of Revenue for the reason that the state violated Rule 25.03 by untimely disclosure of the records. Defense counsel served a standard request for discovery seeking, *inter alia,* "Any ... documents ... which the state intends to introduce into evidence at the hearing or trial...." Rule 25.-03(A)(6). The prosecutor had informed the defense attorney that the sales tax records were available in his office for the attorney's inspection. Defense counsel, however, did not see the records until the day of trial. He then asked that the evidence be excluded in accordance with Rule 25.16.

■ The trial judge has wide discretion in determining what sanction, if any, to impose. *State v. Williams,* 679 S.W.2d 915, 918 (Mo.App.1984). The question is whether the late disclosure of the evidence resulted in fundamental unfairness or prejudice to the defendant. *State v. Gormon,* 584 S.W.2d 420, 423 (Mo.App.1979).

■ "When defense counsel had prior knowledge of the state's possession of evidence, it is difficult to imagine that the introduction of that evidence at trial came as any shock." *State v. Neverls,* 702 S.W.2d 901, 903 (Mo.App.1985). Disclosure of evidence shortly before trial does not result in fundamental unfairness as long as the defense is given adequate opportunity to review such evidence before its introduction. *Id.* Here, the prosecutor had informed defense counsel that the sales tax records were available for viewing at his office. Defense counsel can hardly claim surprise when those same records were subsequently introduced at trial. Further, there is no indication in the record as to how defendant was prejudiced by the allegedly untimely disclosure of the documents. Based upon the record before us, we fail to see how the admission of the sales tax records resulted in any fundamental unfairness to defendant. Defendant's final point is denied.

The judgment of the trial court is affirmed.

GREENE, P.J., and CRIST, KENNEDY and MARSH, Special Judges, concur.