STATE of Missouri,
Plaintiff–Respondent,

v.

Ervin MITCHELL,
Defendant–Appellant.

No. 53359.

Missouri Court of Appeals,
Eastern District, Division Four.

April 12, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 6, 1988.

Application to Transfer Denied June 14, 1988.

James Knappenberger, Shaw, Howlett & Schwarz, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Scott Templeton, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Ervin Mitchell, appeals from his conviction, after a jury trial of murder in the first degree. Section 565.020.2, RSMo (1986). He was sentenced to imprisonment for life without eligibility for probation or parole. We affirm.

Defendant does not challenge the sufficiency of the evidence. The evidence, viewed in the light most favorable to the verdict, is that defendant lived with his girlfriend, Linda Hicks (victim), over a tavern which he managed. On October 31, 1986, he came down from their living quarters into the bar. The victim, several patrons, and a barmaid were in the bar.

Defendant approached the victim, who was seated at a table with a friend. The victim had been drinking alcoholic beverages throughout the day. Defendant and the victim began arguing. Defendant took out a gun, pointed it at the victim's head, and told her to get out of the tavern. He then struck her several times. Defendant fired the gun, but no one was hit. The victim, however, was knocked to the floor by the blows. When she got up, her head was bleeding. She went to the bar to get a towel. Defendant followed her. He and the victim began arguing again. The victim asked another patron to call the police; but defendant ordered the patron not to do so.

Defendant then grabbed the victim's arm. She jerked away. Defendant fired the gun and, after a short pause, fired again. The victim fell to the floor. The patrons and barmaid fled from the bar.

When the police arrived, defendant told them the victim had been shot during a robbery. He later admitted to the shooting but claimed that his gun had discharged accidentally. He had thrown the gun out the door of the tavern. He testified at trial and repeated that the shooting had been accidental. The gun used in the shooting was never recovered.

■ In his first point, defendant alleges that the trial court erred in permitting opinion testimony from a lay witness because such testimony was irrelevant, prejudicial, and invaded the province of the jury. After James Tillman, the victim's brother-in-law, was informed of the shooting, he went to the tavern. Upon his arrival, he was told that the police were investigating a robbery. He testified that he engaged in the following exchange with the police officer assigned to the investigation:

[Prosecutor]: My question is: What did you say to Officer Burgoon, not what you're thinking now or then or whatever, what you said to him?

[Tillman]: I told Officer Burgoon there was no robbery, he killed her.

\* \* \* \* \* \*

[Tillman]: You should go back in the tavern and look for the gun and money.

The trial court admitted Tillman's testimony as an exception to the hearsay rule and admonished the jury that the testimony was being admitted to show the police officer's subsequent conduct after Tillman's statement.

We need not reach the issue of the admissibility of Tillman's testimony. Assuming *arguendo* that the trial court erred in allowing Tillman's testimony, the question remains whether defendant was thereby prejudiced.

In his opening statement, which was made before any evidence, was adduced, and again in his testimony, defendant admitted that there had been no robbery and that he had shot the victim. His defense was that the gun went off accidentally. In view of that evidence, Tillman's statements to the same effect were not prejudicial to defendant. Defendant's first point is denied.

In his second point, defendant contends that the trial court erred in permitting a replica of the gun allegedly used in the shooting to be introduced as an exhibit at trial. Defendant claims that he was prejudiced because "the prosecutor was waving the gun, walking up and down in front of the jury, holding it to his head, and pointing it at his head." The actual weapon used in the shooting was never located.

■ A model, reproduction, or replica of an unavailable object is admissible as

long as it fairly represents the object which it is offered to demonstrate and it is relevant to a material issue. *State v. Woods*, 637 S.W.2d 113, 117 (Mo.App.1982). As with all demonstrative evidence, the admissibility of a replica rests within the trial court's broad discretion. *Id.* When the actual weapon used in a crime is unavailable and the above criteria are met, a model or replica of the weapon may be admitted into evidence. *Id.*

■ Here, in their opening statements, both attorneys told the jury that the .25 caliber gun which was going to be produced at trial was a replica. Whenever the gun was used at trial, the prosecutor reiterated that the gun was a replica and not the weapon used in the shooting. Defendant admitted the shooting but claimed it was an accident. He stated that he tossed the actual weapon out of the tavern after the shooting. That gun was never recovered. The trial judge viewed first hand how the State used the replica for demonstration purposes. We defer to his judgment. Defendant's second point is denied.

■ In his third point, defendant claims that the trial court erred in failing to restrict the prosecutor's cross-examination of defendant regarding the present location of defendant's son. At trial, defendant objected to the question on the basis of prejudice. Defendant also alleges that the trial court erred in permitting the prosecutor, in closing argument, to draw an adverse inference from defendant's son's absence from the state. Defendant made a general objection to the prosecutor's comments. The trial court sustained defendant's objections in both instances and instructed the jury to disregard both the question at issue as well as the comments by the prosecutor during closing argument.

Defendant's objections were sustained. He did not request additional relief. It is therefore assumed that the corrective action taken by the court was adequate. *See, e.g., State v. Babbitt*, 639 S.W.2d 196, 199 (Mo.App.1982). Since defendant received the relief that he sought, he-cannot now claim error. Defendant's third point is denied.

In his fourth point, defendant contends that the trial court erred in failing to instruct on "excusable homicide" pursuant to MAI–CR3d 304.11(d). An extended opinion on this point would serve no jurisprudential purpose. Defendant's fourth point is denied pursuant to Rule 30.25(b).

■ In his fifth point, defendant contends the trial court erred in failing to restrict the scope of the redirect examination of the barmaid, Renie Brown. On direct examination, Ms. Brown stated that, after she heard the first shot, she was walking toward the door when she heard the second shot. She also stated that she could not hear what defendant was saying to the victim just prior to the shooting. On cross-examination, defendant attempted to impeach Ms. Brown with her grand jury testimony that she was at the door when she heard the second shot. On redirect, the State questioned Ms. Brown about what she heard defendant say to the victim. Upon reading her grand jury testimony, she then testified that defendant told the victim, "Bitch, if you think you're going to make it to that back door, I'll shoot you."

The scope of redirect examination of a witness is within the sound discretion of the trial court and we review only for an abuse of that discretion. *State v. Neverls*, 702 S.W.2d 901, 905 (Mo.App.1985). A witness may be properly interrogated on redirect examination as to any matter which tends to remove inferences or suggestions which might have arisen during testimony on cross-examination. *Id.*

Here, on cross-examination, defense counsel questioned the witness extensively about what occurred in the bar and the sequence of events leading up to the shooting. The witness's grand jury testimony was used during the cross-examination. The witness's statement about what defendant said to the victim and the use of her grand jury testimony were within the scope of redirect examination. The trial court did not abuse its discretion in admitting Ms. Brown's statement. Defendant's fifth point is denied.

In his sixth point, defendant charges error in the trial court's failure to declare a mistrial when the victim's daughter was crying on the witness stand. In his seventh point, defendant claims error in admitting evidence, without objection, that the summer before the murder, defendant had fired a gun at a table at which he was sitting with the victim. We have reviewed these points and find that an extended opinion on them would have no jurisprudential value. These points are denied pursuant to Rule 30.25(b).

In his last point, defendant claims that the trial court abused its discretion in admitting exhibits which were photographs of the victim. The photographs had been taken during an autopsy, after the wounds had been exposed to show the victim's injuries.

Photographs may be admitted into evidence to show the nature or location of wounds or to corroborate or refute testimony. *State v. Holtkamp,* 588 S.W.2d 183, 190 (Mo.App.1979). The photographs in this case were admitted during the testimony of the pathologist who performed the autopsy. They were admitted for the purpose of showing the nature, location, and extent of the victim's wounds. If the photographs were shocking or gruesome, it is because the crime itself was of that nature. *State v. Jones,* 726 S.W.2d 400, 402 (Mo. App.1987). We find that the trial court did not abuse its discretion in admitting the pictures into evidence. Defendant's eighth point is denied.

The judgment is affirmed.

SIMON, P.J., and GRIMM, J., concur.