STATE of Missouri, Respondent,

v.

**Johnnie Ray NIXON, Appellant.**

**Johnnie Ray NIXON, Movant–Appellant,**

v.

STATE of Missouri, Respondent.

Nos. 60834, 62263.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 20, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 26, 1993.

---

Mary J. Lake, Hillsboro, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

Johnnie Ray Nixon ("Nixon") appeals from the judgment of the trial court after a jury found him guilty of two counts of forcible sodomy pursuant to section 566.-060 RSMo.1986, one count of forcible rape pursuant to section 566.030 RSMo.1986, and one count of tampering first degree pursuant to section 569.080.1(2) RSMo. 1986.[1] The trial court sentenced Nixon in accordance with the jury's verdict to consecutive terms of twenty-five years' imprisonment on each of the sodomy and the rape counts, and two years' imprisonment on the tampering count for a total of seventy-seven years' imprisonment. Nixon also appeals the judgment of the trial court denying his Rule 29.15 motion for post-conviction relief without an evidentiary hearing. The two appeals have been consolidated pursuant to Rule 29.15(*l*). We affirm both judgments.

The evidence viewed in the light most favorable to the verdict reflects the following facts. Victim K.S., a thirty-seven year old woman, stopped by a bar in Jefferson County around 11:30 p.m. on February 15, 1990, to talk with the female bartender.[2] Another woman, K.P., an acquaintance of K.S., was also present. The two women and female bartender decided to go to a diner for breakfast when the bar closed at 1:00 a.m. They had overheard Nixon on the telephone attempting to find a ride home from the bar. K.S. offered him a ride as far as the diner.

After eating at the diner, Nixon asked K.S. to drive him to his house. She agreed to his request. K.P., Nixon and she left the diner together in her car. K.S. drove, K.P. sat in the front passenger side, and Nixon sat in the back seat. He directed K.S. down an unfamiliar gravel road. While K.S. was driving, Nixon reached between the front bucket seats and elbowed K.S. against the window with his left arm. He then pushed the transmission lever into park and grabbed the keys from the ignition.

Alighting from the car, Nixon opened the front passenger door and grabbed K.P. He put her in a headlock, threatened to kill her and ordered K.S. to come around to him. K.S. did as Nixon ordered. He grabbed her by the hair, pushed her to the ground, and directed her head toward his penis to orally stimulate him. After a minute or more he lifted her up by the hair and ordered her to unlatch K.P. who had been unable to release her seat belt. With his other hand, he reached for K.P.'s hair, and pulled her out of the car. He forced them both toward the back of the car and shoved K.S.'s front against the car and raped her, penetrating her vagina from the backside. He pushed both women toward the trunk of the car, and anally sodomized K.S. twice.

Still holding both women by their hair, he forced both of them to a kneeling position to suck and fondle his penis. He bashed their heads together. Nixon's pants were down around his knees. K.S. was able to knock him off balance. She then fled into the woods, leaving K.P. behind. K.S.

---

**1.** Sections 566.060 and 566.030 now appear in RSMo.Cum.Supp.1992, following their amendment in 1990, effective August 28, 1990.

**2.** We refer to victims by their initials only.

found a house nearby, and she wakened its occupants. They telephoned the police. She was later taken to a hospital emergency room.

In the meantime, Nixon made K.P. get back in the car. He drove around for several hours. During that time, he again made her engage in oral sex as he drove. She threw up on him. Eventually he stopped driving, wiped the steering wheel off with his shirt, got out of the car and ran into some woods. K.P. went to the police department and then to the hospital.

The police subsequently arrested Nixon. Nixon later testified that the women had initiated the sexual activity. He admitted that he and K.S. had engaged in fellatio and sexual intercourse, but claimed that it was consensual.

On his direct appeal, Nixon raises seven points which pinpoint trial court error in giving certain instructions, in limiting his cross-examination of a key witness, and in failing to grant a mistrial after improper prosecutorial comment. Nixon's sole point attacking the Rule 29.15 judgment concerns whether his seventy-seven year sentence was excessive. We address each issue in turn.

Nixon asserts in his first and second points that the trial court erred in submitting verdict directing instructions five and six, based on MAI–CR3d 320.08.1, and instruction seven, based on MAI–CR3d 320.-02.1B, because there was no evidence that Nixon used "forcible compulsion" to rape or sodomize either woman. In his third point Nixon again focuses on these same instructions. He complains the trial court erred in submitting these instructions without also submitting to the jury the definition of "serious physical injury."

◼ The State correctly observes that Nixon failed to preserve these assignments of error for appellate review. If a point relates to the giving, refusal, or modification of an instruction, such instruction shall be set forth in full in the argument portion of the brief. Rule 30.06(e). Failure to comply with this rule constitutes failure to preserve such point for appellate review. *State v. Coats*, 835 S.W.2d 430, 434–35

(Mo.App.1992). Nixon has failed to set out these instructions anywhere in his brief. Only plain error review is warranted. Furthermore, an instructional error is seldom a plain error. *State v. Mallory*, 851 S.W.2d 46, 48 (Mo.App.1993); *State v. Walton*, 703 S.W.2d 540, 542 (Mo.App.1985). To establish that instructional error is plain error, defendant must go beyond demonstration of mere prejudice and establish such a misdirection of the jury as would cause manifest injustice or miscarriage of justice. Rule 30.20; *Mallory*, 851 S.W.2d at 48; *Walton*, 703 S.W.2d at 542.

◼ Despite Nixon's characterization of his first two points as instructional error, the gist of his complaint is actually the sufficiency of the evidence establishing his use of forcible compulsion against either victim. He argues the testimony of the victims establishes that his use of force came *after* the sexual molestations. He states that each woman knew that he had no means of carrying out any of the threats he made. Nixon further emphasizes the size of the victims relative to his stature and build belies any evidence of forcible compulsion. K.S. is 4'11" and weighs 154 pounds; K.P. is 5'7" and weighs 189 pounds; and Nixon is about 5'8" or 5'9" and weighs 160 pounds.

◼ Forcible compulsion, an essential element of forcible rape and forcible sodomy, may be proved by evidence of either (a) physical force that overcomes reasonable resistence, or (b) a threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping. *State v. Jones*, 809 S.W.2d 37, 39[4] (Mo.App.1991). Both victims testified to Nixon's use of force against them. He had initiated his attack against both victims violently, first by shoving K.S. against the car door as she was driving in order to take the keys from the ignition, and then by putting K.P. into a headlock. He had pushed and pulled both women after grabbing them by the hair to make them do as he wished. He told K.S. that he wished her husband were there to watch him kill her. He threatened K.P. that if they did not do

as he wished, one of them would watch the other die. K.P. stated she did not see a weapon but was unsure whether Nixon had one or not. K.S. had struggled unsuccessfully several times with Nixon before she finally escaped.

Even if both women could be considered physically large it would not render them immune to sexual molestation. Size or stature is not necessarily an indicia of strength. The rule is well established in Missouri that one may be guilty of rape even though the woman offers no physical resistance if she submits through fear of personal violence. *State v. Koonce*, 731 S.W.2d 431, 439 (Mo.App.1987). Resistance never comes into play where a threat (constructive force) is employed. *Id.* The jury had ample opportunity to view both victims and Nixon and to consider the relative sizes of each in assessing the disparate accounts of what occurred that night. We are satisfied that the State presented sufficient evidence of "forcible compulsion" as that term is defined in the instructions given here.

■ Nixon's complaint that the instructions failed to define "serious physical injury" was not raised at trial nor included in his motion for new trial. We review for plain error. Notes on Use 6 to MAI–CR3d 320.08.1 from which instructions five and six for forcible sodomy were patterned provides that if the term "serious physical injury" appears in the instruction, it must be defined, except where it is used in the definition of "forcible compulsion." These two instructions employed the term "serious physical injury" only in the definition of "forcible compulsion." The instruction given conformed to the approved form and followed the applicable Notes on Use. There was no error, plain or otherwise.

The Notes on Use for MAI–CR3d 320.-02.1B for forcible rape, the basis for instruction seven, state that certain terms used in that instruction must be defined. The Notes on Use do not require that any definition be given for "serious physical injury." Thus, the omission in instruction seven of a definition for "serious physical injury" was not error. Nixon's first three points on instructional error have no merit.

■ In his fourth, fifth and sixth points, appellant states that the trial court erred in restricting the scope of his cross-examination of rape victim K.S. He maintains that he should have been allowed to elicit testimony concerning: 1) prior sexual and physical abuse of her; 2) her psychological injuries resulting from appellant's attack on her; and 3) her prior alcohol and drug use. He argues that the exclusion of this evidence prohibited him from cross-examining her about her state of mind and her perceptions of forcible compulsion.

The prior sexual and physical abuse of K.S. involved three episodes. When she was thirteen, her father had put her on his lap when his penis was erect. Another time, her grandfather once touched her breast. Both times she had said to stop, and nothing else happened then or later. The third occasion related to the physical and sexual abuse of her by her first husband to whom she was married for over eleven years, from when she was twenty until she turned thirty-one. Appellant believes evidence of these episodes is probative of K.S.'s perception of what constitutes forcible compulsion. In his view, such evidence indicates that K.S. was submissive and sees threats when, in reality, there are none.

■ Under the rape shield law, evidence of specific instances of the complaining witness's prior sexual conduct or the absence of such instances or conduct is inadmissible, except in certain specific instances. Section 491.015 RSMo 1986. None of the incidents Nixon sought to introduce fall within any of these exceptions. Furthermore, even if such evidence were within a statutory exception, despite our determination to the contrary, the evidence is admissible only to the extent that the trial court finds it relevant to a material fact or issue. *Id.* Trial courts are given broad discretion on questions of relevancy and without a clear showing of an abuse of that discretion, appellate courts will not interfere with the trial court's ruling. *State v. Parkhurst*, 845 S.W.2d 31, 36 (Mo. banc 1992).

Here, the trial court decided that such evidence was totally irrelevant. We agree. We discern no probative value to past acts of sexual conduct or abuse of K.S. stemming from her childhood and her marriage nearly six years prior to appellant's attack on her.

Evidence concerning psychological injuries resulting to K.S. from the rape and sodomy by appellant was also excluded by the trial court. Appellant attempted to introduce evidence that, in April 1990, K.S. had been treated at a psychiatric unit in a hospital. Appellant states that K.S. acknowledged that she went to the center because of her many personal problems, despite her original assertion that she went to seek counseling solely for the problems caused by Nixon's molestation of her. Appellant concludes that K.S.'s misrepresentation of her psychological injuries and her failure to admit that personal problems, other than his attack on her, required her psychiatric treatment directly affect her credibility. He argues that, if she fabricated "rape trauma," then she may have fabricated other elements of the incident involving him.

K.S. never testified at trial about psychological injuries or rape trauma syndrome as a result of appellant's attack. During direct examination, when asked about her injuries following appellant's rape and sodomy of her, K.S. stated only that she had a bump on her head and scrapes on her legs. We perceive no rationale to allow appellant's line of questioning concerning K.S.'s mental health in the aftermath of the rape and sodomy during appellant's cross-examination of her. The trial court did not abuse its discretion in overruling appellant's offer of proof on this matter.

The final salvo in Nixon's offer of proof dealt with prior alcohol abuse and drug use by K.S. As his offer of proof, Nixon elicited testimony from K.S. that she had problems with alcohol for about eight years during her first marriage and problems with amphetamines when her marriage broke up in 1985 or 1986. He argues this evidence was germane because K.S. had admitted that she had two drinks at the bar the night that he molested her.

Again, we disagree with appellant. We are hard-pressed to draw any nexus between K.S.'s problems with substance abuse many years earlier in 1985 or 1986 to her consumption of two or three drinks on the night appellant raped and sodomized her in 1990. We will not interfere with the trial court's ruling. Nixon's fourth, fifth and sixth points are denied.

 Nixon charges in his seventh point that the trial court erred in failing to grant a mistrial sua sponte following certain prosecutorial misconduct. During cross-examination of defendant, the prosecutor began a question to Nixon by asking: "You remember telling your doctor two weeks ago that you couldn't remember anything about this sodomy?" Defense counsel immediately objected and the two attorneys approached the bench. Defense counsel informed the judge that the use of any statements by defendant to his doctor was improper because such statements had not been disclosed to the defense despite a request for discovery and because the prosecutor had obtained the statements by ex parte contact with defendant's physician in violation of the physician-patient privilege. After an extended bench conference, the trial court sustained the objection. Defense counsel further requested that the jury be instructed to disregard the question. The trial court did so.

 Appellant now complains that the prosecutor's question was an attempt to put inadmissible evidence before the jury. He argues that the question damaged his credibility, prejudicing him in the eyes of the jury. He concludes that the trial court should have realized the prejudice to him and declared a mistrial. At no time did defense counsel request a mistrial. Where defendant's objection was sustained and no additional relief sought, we assume that the corrective action taken by the trial court was adequate. *State v. Mitchell*, 751 S.W.2d 65, 67 (Mo.App.1988). Since defendant received the relief that he sought, he cannot claim error. *Id.* Furthermore, the declaration of a mistrial is a drastic remedy

that should be employed only in those extraordinary circumstances in which prejudice to the defendant cannot otherwise be removed. *State v. Burgess,* 800 S.W.2d 743, 746[7] (Mo. banc 1990). The decision to declare a mistrial rests largely in the discretion of the trial court which, having had an opportunity to observe the incident, is better able to determine whether prejudice necessitating a mistrial occurred. *Id.* For that reason, its decision will rarely be disturbed on appeal. *Id.* We decline to do so here.

Nevertheless, we do not condone the conduct of the prosecutor's action in having resorted to an unauthorized *ex parte* contact with defendant's physician. We remind prosecutors of their unique role in the criminal justice system. *See State v. Robinson,* 835 S.W.2d 303, 306 (Mo. banc 1992). Prosecutors and the entire law enforcement community represent the State of Missouri. *Id.* The State's interest in the criminal trial is not in convicting the innocent but that justice be done. *Id.* In circumstances different from those here, the prosecutor's conduct might well warrant reversal. Nevertheless, in this case, the question did not refer to any matter not already before the jury so that, absent a request for a mistrial by the defense, the trial court's failure to grant a mistrial *sua sponte* is not reversible error. Nixon's seventh point is denied.

As his final point, and the sole issue in his Rule 29.15 appeal, Nixon posits that his sentence of seventy-seven years' imprisonment to be excessive and cruel and unusual punishment. He states that there were no aggravating circumstances surrounding the incident, no serious injuries to the witnesses, and no prior offenses by him to warrant a sentence of this term. He declares that his punishment is grossly disproportionate to the seriousness of the crimes.

This court finds offensive Nixon's argument that his sexual molestations ranging from rape, anal intercourse and oral sodomy of two women resulted in "no serious injuries to the witnesses." Although Nixon was not a prior offender, his sentence was not excessive. His sentence was well within the statutory range of punishment prescribed by our Missouri legislature in Section 558.011, RSMo.1986. Nixon's final point has no merit.

The judgments of the trial court and motion court are affirmed in all respects.

GARY M. GAERTNER, C.J., and SMITH, J., concur.