THE STATE OF NEW JERSEY, RESPONDENT, v. MORRIS WESLER, DEFENDANT-APPELLANT.

THE STATE OF NEW JERSEY, RESPONDENT, v. WILLIAM TOMASH, DEFENDANT-APPELLANT.

Argued May 4, 1948—Decided June 21, 1948.

Before CASE, CHIEF JUSTICE, and Justice BURLING.

For the State of New Jersey, *Lewis P. Scott,* Prosecutor of the Pleas, and *David R. Brone.*

For the defendants-appellants, *Coulomb, McAllister & Hunter (Harry R. Coulomb).*

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. These are appeals under chapter 187, *Pamph. L.* 1946, allocated as *R. S.* 2:195A–1, *et seq.,* from judgments of conviction after a jury trial in the Atlantic County Court of Quarter Sessions. There were separate indictments against each of the defendants. The Wesler indictment charged the defendant with rape, carnal knowledge and carnal abuse of one Dorothy Stewart, and the Tomash indictment charged the defendant with like offenses against one Ethel Lawrence. The indictments were tried together, and the appeals are argued together with but one state of case and one appellants' brief. The prosecutor in each instance abandoned the count for rape, and the convictions were for carnal knowledge and carnal abuse.

The appellants present as their point one that the verdicts are against the weight of the evidence and are the result of mistake, passion and prejudice. The statutory authority is in *R. S.* 2:195A–9:

"The appellant in any criminal case may assign as a ground of appeal that the verdict was against the weight of evidence, whether or not any motion to acquit has been made; and, if it shall appear from a consideration of the entire evidence that the verdict was against the weight of the evidence, the appellate court shall reverse the verdict and order a new trial."

That wording is taken almost *verbatim,* in so far as the pertinent part of it is concerned, from *R. S.* 2:195–19, and the effect, we conclude, is to be the same. "To set aside a verdict as against the weight of the evidence that fact must

be so clear as to give rise to the inference that the verdict was the result of mistake, passion, prejudice or partiality (citing cases). * * * The test under *R. S.* 2:195–19 * * * is not whether our minds, as reviewing judges, are also satisfied beyond a reasonable doubt of the guilt of the accused. The test is whether the jury whose exclusive function it is to determine whether the guilt of the accused has been established beyond a reasonable doubt committed an 'injustice' as the result of a 'plain and obvious failure' to function within its allotted sphere." *State* v. *Monia*, 132 *N. J. L.* 91, and cases there cited. The argument is that the two girls, escaped inmates of a Correction Institution for Wayward Girls at Allentown, Pennsylvania, are psychopaths and immoral and because of those characteristics are not to be believed, and, further, that inasmuch as there would not be sufficient evidence upon which to convict without their testimony, we should find that the convictions were against the weight of the believable evidence and should be reversed. The argument calls attention to certain alleged discrepancies and inconsistencies in the testimony but rests largely upon the testimony of two psychiatrists, Dr. William Drayton, Jr., and Dr. Max Rossman, that both girls are psychopaths and immoral and that psychopaths are prone to be untruthful. That testimony and all the other proofs were before the jury whose function it was to sift truth from falsehood and who, under the charge of the court, undertook to perform that function and who reached a verdict that we are not prepared to hold, considering the entire evidence, is against the weight of the evidence as above defined. There are respects in which the girls were clearly telling the truth. We are unable to say that because of the record and the characters of these young women their testimony is to be utterly rejected regarding the acts upon which the defendants were convicted any more than we are able to say that the defendants themselves, because of some doubtful attributes, were not to be believed. Tomash admits to an earlier conviction for crime and to having served a term in state's prison because of it. He claims to be in the general contracting business, but he has no office other than the room where he lives. His place of residence consists of one

room in which is a kitchenette and a pull-down bed, together with a bathroom, where he says he kept a colored maid who was there much of the time when the girls were present, but he does not produce the maid as a witness. He called one Mary Kurtz, a former employee, apparently as a character witness concerning his attitude towards one who had worked in the apartment. There was this testimony on direct examination:

"*Q*. Did he ever make any suggestions to you of any kind? *A*. Well, I just skipped them.

"*Q*. Did he? *A*. Well, I just let it go. I didn't bother it—he wasn't in there enough."

A reading of the entire testimony does not convince us that the verdicts are so against the weight of the evidence as to be adjudicated the result of mistake, passion, prejudice or partiality.

It is next said that the court erred in refusing to charge defendants' request as follows:

"Before either of these defendants can be convicted you must be satisfied beyond a reasonable doubt as to the truth of the testimony of Ethel Lawrence and Dorothy Stewart, and if you are not so satisfied, your verdict should be not guilty."

The request was so worded as to direct the jury that if they were not satisfied beyond a reasonable doubt as to the truth of the testimony of both Ethel Lawrence and Dorothy Stewart the verdict should be one of not guilty as to both defendants. The testimony of the two girls dovetailed in many respects, but the testimony of both of them was not essential to the proving of the guilt of either defendant. The case against Tomash was mainly the testimony of Ethel Lawrence, and the strength of the case against Wesler was in the testimony of Dorothy Stewart. Jurors are not bound to believe testimony of any witness in whole or in part, but they may reject what in their conscientious judgment ought to be rejected and accept that which they believe credible.

The third point is that the court was in error in charging the italicized words in the following portion of the charge:

"The burden of proof of a criminal offense, ladies and gentlemen, is upon the state. It is always upon the state

to prove the guilt of the accused beyond a reasonable doubt, as it is said, and the burden is never upon the accused to prove his innocence. The burden never shifts, but remains throughout the trial on the state. * * *

"*Although not especially requested to do so, I will endeavor to assist you in case you have any difficulty in determining whether you have a doubt, if it is what I have spoken of as a reasonable doubt. I am obliged to mention the argument of counsel, that a reasonable doubt is a doubt existing for a reason. This I am bound to say has not been approved by your courts as a definition.* Better said, it is a term often used, probably pretty well understood, but not easily defined. It is not a mere possible doubt, because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that state of the case which after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge. The burden of proof is on the prosecution. If upon such proof there be a reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal. The evidence must establish the truth of the fact to a reasonable and moral certainty; a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it."

It is to be observed that the judge did not say to the jury that a reasonable doubt was not a doubt existing for a reason. He said that the language had not been approved by the courts as a definition and that it was better to state the rule in the language which the court proceeded to give to the jury. The statement of the better rule which the court enunciated was taken almost *verbatim* from *Donnelly* v. *State*, 26 *N. J. L.* 601 (at *p.* 615), and from *State* v. *Linker*, 94 *Id.* 411. The classical language did not originate in the Donnelly opinion but, as was said in that opinion, was taken bodily from the definition given by Chief Justice Shaw in the famous trial of John C. Webster. In *State* v. *Bailey*, 3 *N. J. Mis. R.* 210, this court in a *per curiam* opinion found that

the trial court did not err in saying to the jury by way of amplification that a reasonable doubt was a doubt existing for a reason; but the context of the charge also instructed the jury that the state must satisfy them to a point where they had an abiding conviction as to a moral certainty of guilt. We think that the trial court in the instant case did not err in saying that the rule was better stated in the language which it proceeded to give. In any event, the jury was correctly charged as to the principle of reasonable doubt and, in our opinion, the defendants were not prejudiced in their trial.

It is next said that the court erroneously charged the jury on the question of reasonable doubt. That subject is discussed by us *supra.*

Appellants' fifth point is that the court erroneously commented on defendants' request to charge on the proposition *"falsus in uno, falsus in omnibus."* What the court said to the jury was this:

"I am requested by defendants' counsel to say certain things to you by way of charge in behalf of each defendant. I will charge as requested.

\*      \*      \*      \*      \*      \*      \*

"Third: 'If you find from the evidence that Dorothy Stewart and Ethel Lawrence have willfully or intentionally testified falsely to any material fact, you may disregard their entire testimony, except where it is corroborated by other credible evidence in the case.'

"I so charge, but with this addition, ladies and gentlemen of the jury. This is what is known as the principle in our law derived from the doctrine of *'falsus in uno, falsus in omnibus,'* which is to say, 'false in something, false in everything.' That is not a mandatory or compulsory principle. In other words, if you find a witness to have falsified in something, you are not compelled or required to take it that he testified falsely in everything, but you may do so."

The court was correct in stating that the maxim *"falsus in uno, falsus in omnibus"* does not incorporate a mandatory or compulsory principle. Indeed, we designate it a maxim rather than a principle or a positive rule of law. It has to do

with the weight of testimony, and the charging of it or not is largely within the discretion of the judge provided he charges correctly upon the weight of evidence. The court did not accurately limit the expression "false in something" to a willful falsification of a material fact; but harm did not thereby come to the appellants. *Cf. Addis* v. *Rushmore, 74 N. J. L.* 649; *Hargrave* v. *Stockloss,* 127 *Id.* 262; *State* v. *Sturchio,* 127 *Id.* 366.

The sixth point is that the court erred in charging the jury as to the number of verdicts it might return. This is the disputed direction:

"You should return a separate verdict, that is, you should return a verdict on each of these indictments, and you should, you understand, report your verdicts separately. Your verdicts may be one of two: you may find the defendant in each indictment guilty as charged, or you may find him not guilty."

The argument is that the court left the jury with the impression that it had only a choice of two verdicts on both indictments so that it must either find both defendants guilty or both defendants innocent. The court could have expressed its meaning more precisely; but we are not impressed with the likelihood of a misunderstanding by the jury of the purport of the charge. The court had already charged the jury that there were two indictments for consideration before them. The present direction was that there should be a verdict on each indictment and that such verdict (on each indictment) might be guilty or not guilty. We think that the jury could not have been confused by that language.

Seventh and finally, it is argued that the court erred with respect to talesmen sworn as jurors for the trial of the cause. The record discloses that before the completion of the jury the panel of jurors was exhausted, whereupon the court directed the calling of talesmen. Counsel for the defendants objected upon the ground that under the statute a defendant was entitled to be served with a list of the jurors who were to be his triers. The objection was overruled. Talesmen were called and the jury was sworn. It is contended that the court erred therein.

*R. S.* 2:188–4 requires that any person indicted for rape shall have a copy of the indictment and a list of the jury delivered to him at least two entire days before the trial. That was done. *R. S.* 2:91–3 provides:

"When the special panel or list of jurors served on a defendant in any criminal case in which he shall be entitled to twenty peremptory challenges shall, from any cause, be exhausted before a jury for the trial of the indictment shall be obtained, talesmen shall be taken from the general panel of jurors returned for the term at which the defendant is to be tried, if any remain.

"If more talesmen are required than the number of jurors remaining on the general panel, the sheriff or other proper officer shall forthwith summon, from among the bystanders or others, such additional number of persons qualified to serve as jurors as may be ordered by the court, and make return thereof immediately, and place the names of the jurors so returned in the box and draw therefrom until the jury is completed. If the first order for talesmen shall prove insufficient, other and further orders may be made until the necessary number of jurors shall be obtained.

"The defendant, however, shall not be entitled to a service of the list of talesmen taken from the general panel after the special panel is exhausted, nor of the talesmen summoned by order of the court, unless the court shall specially so direct, in which case the court shall fix the length of time the list of talesmen shall be so served, before the drawing of the jurors shall proceed."

In our opinion that statutory section applies to this case, and defendants appear to concede that that is so because they argue—and this is the gist of their present objection—that under the foregoing provision the list of jurors served on the defendants must be exhausted in the selection of jurors in the trial of the case with respect to which the list was served and that in the present case the exhaustion was due to other causes than the selection of jurors for the trial of the defendants. To this there are two answers: First, the statute provides for the resort to talesmen if the special panel or list *from any cause* be exhausted; and, second, there is nothing

before us to show from what cause the special panel became exhausted. We assume, in the absence of a showing *contra,* that the provisions of the statute were followed. In addition, it may be noted—although we find no occasion to decide what, if any, legal aspect may attach to the incident—that the counts for rape, which constituted the occasion for serving the list of the special panel, were abandoned on motion of the prosecutor and by court order at some time not made known to us but before the state rested on its main case.

We find that the defendants below, appellants here, did not suffer manifest wrong or injury.

The judgment below will be affirmed.