UNITED STATES of America
v.
Jesse G. DILDY.
Crim. No. 1095-65.

United States District Court
District of Columbia.

Jan. 7, 1966.

Marvin Loewy, Asst. U. S. Atty., Washington, D. C., for the United States.

Addison Bowman, Washington, D. C., for defendant.

LEONARD P. WALSH, District Judge.

Defendant's motions test the power of the Court. He moves firstly for a psychiatric examination of the prosecutrix in this, an incest case. Secondly, he moves for a blood test to be taken of the prosecutrix and the prosecutrix' infant son. The motions will be considered in that order.

## I

Defendant requests the psychiatric examination of the prosecutrix as a matter of right. He contends that the complainant woman in a sex offense should always be examined by competent experts to determine whether she suffers from some mental or moral delusion or tendency. And he particularly emphasizes the need for such examination when, as in this case, the prosecutrix is a young girl, since defendant alleges that young girls are peculiarly subject to sexual fantasies leading to downright falsification.

In Wilson v. United States, 106 U.S. App.D.C. 226, 271 F.2d 492 (1959), the court intimated *in dicta* a sympathy with

Wigmore's conclusion that "No judge should ever let a sex offense charge go to a jury unless the female complainant's social history and mental make-up have been examined and testified to by a qualified physician." That case, however, was decided on other grounds. The court specifically stated that it had not adopted Wigmore's view in the past and did not adopt it at that time. They merely emphasized that view to confirm the traditional skepticism of the courts when confronted with the accusations of a female complainant in a sex case.

■■ Whatever skepticism the courts may hold, this Court is unable to parlay that skepticism into a power to force a reluctant prosecutrix to take a pretrial mental examination. The court has no such inherent power over citizens who are prospective witnesses in criminal matters. No doubt such testimony would be admissible if the witness voluntarily submitted to the examination. People v. Cowles, 246 Mich. 429, 224 N.W. 387 (1929); Rice v. State, 195 Wis. 181, 217 N.W. 697 (1928). But when the witness refuses to submit to such examination, there is "a great dearth of authority" affording the court the power to compel her. Psychiatric Lie Detection, 21 F.R.D. 199, at p. 215. On the other hand, there is authority indicating that, lacking a statute, courts are powerless in such situations. Taborsky v. State, 142 Conn. 619, 116 A.2d 433, 49 A.L.R. 2d 1238 (1955); Goodwin v. State, 114 Wis. 318, 90 N.W. 170 (1902); Gregg v. State, 69 Okl.Cr. 103, 101 P.2d 289 (1940).

■ Both Conrad and Wigmore are outspoken proponents of providing the court with power to order such examinations; yet both recognize that such an increase in judicial power is a legislative task. Conrad, Psychiatric Lie Detection, supra, 21 F.R.D. at 216. 3 Wigmore 294(b) sets forth a proposed statute.

■ Defendant herein asserts that this Court has the power to issue a subpoena directing the prosecutrix to submit to a mental examination. There is no case on this point in the District of Columbia. A precedent for the enforcement of such power was not set in United States v. Dunmore, D.C., D.C.Crim. No. 56-61, Feb. 17, 1961. Indeed, the order in that case was rescinded when the prosecutrix refused to submit to the examination. The subpoena powers of the Federal Rules of Criminal Procedure fall significantly short of affording a defendant the right to mental examination of an important witness. Indigent defendants are afforded the right to subpoena witnesses to a trial at Government expense, F.R.Cr.P. 17(b). They may move for the production of documentary evidence and objects, F.R.Cr.P. 17(c). But they do not have the right to issue a pretrial subpoena to force a prosecutrix to undergo a mental examination. The corresponding power under the Civil Rules by which the court can order a party in a controversy to submit to a mental or physical examination in an action in which the mental or physical condition of the party is in controversy is not analogous to the present case. F.R.Civ.P. 35. The witness in a criminal case is not a party to the action. She speaks for the state. Ofttimes she will speak for the state to her own embarrassment and with reluctance. The very absence of such a specific power in the Criminal Rules bespeaks an intended omission. This is particularly true in light of the hard fought battle to sustain the power to order such an examination under Rule 35 of the Civil Rules. Sibbach v. Wilson & Co., Inc., 312 U.S. 1, 61 S.Ct. 422, 89 L.Ed. 479 (1941).

The power to issue such a subpoena is not lightly accrued and should not be lightly implied. Significant values must be balanced. On the one hand, there is support for the taking of mental examinations of the accusing female in a sex case, and particularly in a sex case

where the prosecutrix is a young girl. American Bar Association Committee on the Improvement of the Law of Evidence, 1937–38 Report; Psychiatric Aid in Evaluating the Credibility of a Prosecuting Witness Charging Rape, 26 Ind. L.J. 98 (1950); Comment, Psychiatric Testimony for Impeachment of Witnesses in Sex Cases, 39 Crim.L.J. 750 (1949); Curran, Expert Psychiatric Examination of the Abnormal Witness, 103 U.Pa.L.R. 999, 1004–1005 (1955); Guttmacher and Weihofen, Psychiatry and The Law 375 (1952); Overholser, The Psychiatrist and the Law, at 50–56; Note, Psychiatric Examination of the Mentally Abnormal Witness, 59 Yale 1324 (1950); McCormick, Evidence, #45 (1954). And particularly see Wigmore's emphatic exhortation at 3 Wigmore, Evidence #924(a) (3d ed., 1940), which includes a thorough compendium supporting this view. The heavy penalty which flows from a conviction for incest is also a strong speaking point on the necessity of a thorough fact-finding (or truth-seeking) procedure in the trial of such cases.

However, the Court must remember that such procedures are not the only weight upon the scale which balances human liberties. The liberty of the prosecutrix must also be weighed. The prosecutrix in a sex case is already forced to undergo formidable and ofttimes embarrassing formalities. The government requests a physical examination to corroborate her testimony. Publicity thrives on such cases. She is forced to testify to the facts of her assault from the witness stand in open court. She is subjected to severe cross examination. It is an insensitive argument which urges that one added burden is minimal in comparison to the already distasteful procedures which the prosecutrix must follow. The continuous accumulation of intimidating and indelicate procedural probings tend to induce to silence all but the most hardened victims. So much as we induce such silence in the victim, we discourage the victim from registering her complaint.

The Court has not set forth the above considerations for the purpose of deciding the question, but merely to indicate some of the weighty factors to be balanced in order to support the position that the power to subpoena a witness to appear for a pre-trial mental examination should not accrue to the court by implication. Without a specific grant of such power, the Court lacks the requisite authority to issue the subpoena requested in this case.

Defendant asserts that, lacking the subpoena power, the court should exercise its inherent power over the admission of evidence in order to secure a mental examination of the prosecutrix. It is the contention of the defense that the court should predicate the reception of testimony of the prosecutrix upon her prior acquiescence to a mental examination.

 However, one should not imply from the opinion of this Court that, should the Court have power, the Court would grant such an examination in the case at bar. Such an examination should be granted only upon the sound discretion of the court. Commonwealth v. Kosh, 305 Pa. 146, 157 A. 479 (1931); Gregg v. State, 69 Okl.Cr. 103, 101 P.2d 289 (1940). Most of the cases which have admitted psychiatric testimony for purposes of impeaching the prosecutrix in a rape case have done so on the basis of a background of mental or social disorders relevant to the issue of morality or veracity. Burton v. State, Ind., 111 N.E.2d 892 (1953), overruled in part by Wedmore v. State, 237 Ind. 212, 143 N.E.2d 649 (1957); Tabrosky v. State, 142 Conn. 619, 116 A.2d 433, 49 A.L.R.2d 1238 (1955); People v. Cowles, 246 Mich. 429, 224 N.W. 387 (1929); State v. Wesler, 137 N.J.L. 311, 59 A.2d 834 (1948); Rice v. State, 195 Wis. 181, 217 N.W. 697 (1928). Wigmore, 924(a), pp. 460–63, gives excerpts from Dr. Wm. Healy and Mary Tennery

Healy: "Pathological Lying, Accusation and Swindling," Ch. IV, which illustrates extremely evident backgrounds in pathological cases. The Rice case, supra, indicates that an inherently incredible story might give rise to the need for such an examination, and this Court tends to agree.

However, this Court does not believe that the mere fact a woman registers a complaint of rape should in and of itself, give rise to a need for a mental examination. Certainly some evidence of mental infirmity, flights of fancy, or social maladjustment should be presented to the court prior to the court's questioning the mental stability of the witness. And particularly in this case, where the accused is the father of the witness, and there has been adequate opportunity to observe her actions. See Harvey v. State, 232 Ind. 574, 114 N.E.2d 457 (1953), wherein examination was denied when facts did not indicate a necessity.

To fail to demand a history of mental instability prior to subjecting the witness to a mental examination would be opening the trial courts to a continuous parade of psychiatric experts, who could neither testify to the guilt or innocence of the accused, who could never testify positively to the truthfulness of the testimony offered by the witness, and whose only efficacy would be in pondering the hypotheticals of whether or not the ostensibly sane witness would tend to fabricate in the particular case before the court. The inexact nature of psychiatric science gives us no assurance that such a process would lend aid in the search for truth. There is reason to think that it would merely offer a new forum for the continuing debate between the many disputatious schools of psychiatry. Therefore, if no substantial doubt is cast upon the sanity of the witness, based upon a record of prior mental disorders or sexual fantasies, this Court would refrain from granting the mental examination.

The defendant has not grounded his motion upon any allegation of past disorders. He seeks this examination as a matter of right, based upon the charge of incest, coupled with an allegation of insubstantial corroboration. There may be some merit to the theory that such psychiatric examinations be required in an inverse ratio to the amount of corroboration available in the case. However, in the District of Columbia corroboration is mandatory. Kelly v. United States, 90 U.S.App.D.C. 125, 194 F.2d 150 (1952); Wilson v. United States, 106 U.S.App.D.C. 226, 271 F.2d 492 (1959). Thus, we have two principles. One principle requires corroboration of the prosecutrix in a sex case. The second principle would require a psychiatric examination of an uncorroborated prosecutrix in a sex case. It would appear that these two principles are, to a large degree, mutually exclusive. If the government presents a case without corroboration, the case fails. If the Government is able to present corroboration, there is much less need for the mental examination.

Moreover, in this case the Government indicates there is substantial corroboration, including the testimony of the wife, a confession, and a child born of the illicit liaison.

The motion for the psychiatric examination of the prosecutrix is denied.

## II

■ Defendant's second motion is for blood tests of the prosecutrix and the prosecutrix's infant son. Once again defendant urges that the court exert its subpoena power to accomplish this end. And again, and for the same reasons, the Court must deny the motion. This Court has no authority to issue the requested subpoena.

■ However, defendant's motion deserves further comment. Defendant cannot introduce the results of the blood tests to challenge the chastity of the prosecutrix. In neither a carnal knowl-

edge nor in an incest case is chastity an issue. Lack of chastity is no defense. Moreover, defendant cannot introduce this test to support an affirmative defense of non-paternity. The indictment does not allege paternity, and at this point the subject is not in issue.

However, there is good cause to believe that paternity will be raised in this case by the prosecution for purposes of corroborating the story of the prosecutrix. Defendant contends that the prosecutrix will allege chastity as to all other males and identify the defendant as the father of the child. At that time paternity will be in issue. Defendant seeks a blood test to refute this potential corroborative evidence.

If, at the time of trial, the Government offers evidence of the paternity of the child to corroborate the fact of the sexual act alleged in this case, then certainly defendant should be afforded the same defenses as those afforded in paternity suits, 16 D.C.Code 2347 (Supp. 1965). The identical facts would be in issue. The consequences to the defendant resulting from a conviction for incest would be incalculably more severe. Such an attack would be a valid attack upon the credibility of the prosecutrix. Commonwealth v. Jenkins, 46 Pa.Dist. & Co. R. 677; Skidmore v. State, 57 Tex.Cr. R. 497, 123 S.W. 1129; and see Kidwell v. United States, 38 App.D.C. 566 (1922).

Therefore, it would appear to be within the discretion of the court to predicate the introduction of paternity evidence by the prosecution upon the condition that the results of the blood tests be made available to the defendant.

However, we are here met with a dilemma of a very practical nature. Due to the rotation in assignments of the Judges of the District Court of this Circuit, it is highly unlikely that I will hear this case when it comes to trial. It would be presumptuous to make an evidentiary ruling at this time which would be binding upon another trial judge. On the other hand, the smooth administration of justice would dictate that the trial should not be interrupted after the prosecutrix takes the stand. The delay itself, while not of appreciable extent, could hint to the jury that defendant unsuccessfully sought to challenge the matter which is brought to their attention after the delay.

It might be disruptive to the point of being prejudicial to place the prosecutrix upon the stand, reach the point at which evidence of paternity is to be entered, adjourn the trial, obtain blood tests of the prosecutrix, the child and the defendant, reconvene the court and proceed with the evidence of paternity. This is particularly true in light of the fact that the evidence to be obtained is wholly exclusionary; it is only of use in proving nonpaternity and would not be admissible by the prosecution to establish or corroborate paernity. 16 D.C. Code 2347 (Supp.1965).

In view of this factor, and also in view of the inconvenience which would result during the trial of the case as set out above, this Court suggests that if the prosecution intends to offer paternity evidence in corroboration of the offense here charged, the Government should come to trial prepared to provide defendant with the results of blood tests.

In making this suggestion, this Court has no intention of ruling that the reception of evidence of paternity is predicated upon the corresponding production of the blood tests. Such a ruling would be entirely within the discretion of the trial judge. This Court merely suggests that the prosecution be prepared, should the trial judge so hold, in order to prevent unnecessary delay.

The motion for blood tests will be denied.

Appropriate orders to be submitted.