STATE of Missouri, Respondent,

v.

Marlon ROBINSON, Appellant.

No. 74599.

Supreme Court of Missouri,
En Banc.

June 2, 1992.

Melinda K. Pendergraph, Columbia, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

BENTON, Judge.

Jury-convicted, appellant Marlon Robinson ("defendant") was sentenced to two consecutive ten-year terms for forcible sodomy and forcible rape, and to a concurrent one-year imprisonment for stealing. On appeal, the Missouri Court of Appeals, Eastern District, transferred the case to this Court to examine the inherent authority of the trial court to appoint a psychiatrist to examine the complainant to aid the court in determining the complainant's competency to testify. After reviewing diverse cases within Missouri and across America, this Court holds that the trial court lacks such authority, and so affirms the circuit court.

On December 1, 1987, at 6:55 p.m., two police officers were radio-dispatched to the 4100 block of Page Avenue in the City of St. Louis, in response to a report of a woman screaming. Shining a spotlight down alleys and into garages, the officers spotted the defendant on top of the complainant, apparently engaged in sexual intercourse. On the ground near the complainant's head was a metal tire tool weighing 4 or 5 pounds. The police officers testified they literally pulled defendant from the complainant. Though complainant immediately went to Regional Hospital, no laboratory examination occurred due to "no functioning microscope." The medical record at Regional Hospital showed no cuts or bruises. One police officer remembered a "trickle of blood" on complainant's head.

Other critical facts are almost completely disputed. The complainant—a 41–year–old mother of two—testified she was awaiting a cab when "a fellow snatched me off the street." The complainant hollered, "Help, cab driver." The complainant testified the male hit her in the back and on the side, held her arms "real tight," and led her into a garage. Inside the garage, the male slapped her face and demanded oral sex. The male then stated "Lay down before I kill you, bitch," and ordered her to "pull all your clothes off." In an attempt to get the male to leave her alone, complainant volunteered that she had money, offered him $50 in change, and kissed him on the jaw. The male responded "Bitch, lay down on the ground before I kill you and have me," and "Take your clothes off before I kill you." Then the police arrived. The complainant described the male's clothing, but did not positively identify the defendant. The complainant admitted hearing voices of animals at the time of the incident. The complainant claimed to have taken all her clothes off, contrary to the police officers' testimony.

Defendant testified the third, final day of trial—the only witness that day which concluded with the jury verdict. Defendant—a 30–year–old father of two—flatly denied forcibly raping, forcibly sodomizing, or stealing from the complainant. Defendant stated he had just been to the bank and withdrawn $25 in change. Drinking but not drunk, defendant claimed to be looking for a liquor store when he saw complainant walk toward him, mumbling. According to defendant, he asked her the location of a liquor store, and she told him "right around the corner." The two walked together, and the complainant reached toward his trousers. Complainant asked if defendant would buy her a drink. According to defendant, he asked what he was going to get out of it; complainant responded "some sex," or words to that effect. According to defendant, the complainant grabbed his hand, led him down an alley into a garage,

and undressed herself. Defendant unzipped his pants and had sexual intercourse. Defendant denied ever hitting complainant, denied that anyone ever yelled or screamed, claimed he was zipping up his pants when the police arrived, and first denied but then admitted a previous misdemeanor conviction for assault third degree.

In view of these polar accounts, the defense strategy was clear. Complainant's medical records from three hospitals were described, in detail, by three medical records custodians, documenting her history of mental illness, schizophrenia, excessive alcohol intake, hearing voices, and other behavioral problems, for which she received Prolixin injections. Pursuant to a medical release signed by complainant, a treating physician testified as to complainant's psychiatric state some six months after the incident at issue, concluding that complainant was suffering from some type of mental illness consistent with schizophrenia. More specifically, the physician testified that, in May 1988, he treated her regarding an alleged rape, for which he found no supporting physical evidence. The supervisor of the sex crimes unit for the St. Louis City police testified for the defense that from June 1982 through May 1988, the complainant had filed "between six and seven" complaints of alleged rapes, of which only the present one resulted in charges. The supervisor labeled the complainant a "chronic victim" or "chronic reporter."

In this factual setting, defendant requested, before and during trial, that complainant be evaluated by a psychiatrist to determine her competency to testify. The circuit judge overruled such requests and objections, and defendant alleges error in his Point I. Defendant's Points II and III question the sufficiency of the evidence to support the convictions of forcible rape, forcible sodomy and felony stealing.

## I.

As to Point I, the districts of the court of appeals disagree. The eastern district holds that, in the absence of a statute or rule granting authority to order psychiatric examination of a witness, trial judges lack authority to order such examinations. *State v. Clark,* 711 S.W.2d 885, 888 (Mo. App.1986); *see also State v. Sinner,* 772 S.W.2d 719, 721 (Mo.App.1989); *State v. Wallace,* 745 S.W.2d 233, 235 (Mo.App. 1987); *State v. Moesch,* 738 S.W.2d 585, 588 (Mo.App.1987). The western district holds that a trial court can order such an examination upon a proven compelling need. *State v. Johnson,* 714 S.W.2d 752, 758 n. 6, 759 (Mo.App.1986); *see also State v. Weiler,* 801 S.W.2d 417, 419 (Mo.App. 1990).

In addition to following the rule in a majority of other states, the western district cites to a line of cases of this Court holding that a defendant does not have an automatic right to compel physical or psychiatric examinations of a witness. *See State v. Cox,* 352 S.W.2d 665, 672–73 (Mo. 1961); *State v. Oswald,* 306 S.W.2d 559, 563 (Mo.1957); *State v. Wilson,* 361 Mo. 78, 233 S.W.2d 686, 688 (1950). As none of this Court's cases found trial error in the denial of a motion for an examination, any implication that a trial court could, under some unspecified circumstance, order an examination is dicta. Assuming for the sake of argument that the facts of the present case are sufficiently compelling to justify a psychiatric examination, this Court now squarely faces whether a trial judge has the authority to order such an examination.

Both parties cite numerous other jurisdictions to detail the arguments for and against recognizing an inherent judicial authority to order psychiatric examination. While not universally accepted, a handful of arguments disclose the real issues.

Three basic reasons are cited to support the authority of trial courts to order psychiatric examinations of witnesses in limited circumstances. First, in compelling cases, these examinations are necessary for a "just and orderly disposition of the criminal cause." *See, e.g., United States v. Benn,* 476 F.2d 1127, 1130 n. 12 (D.C.Cir.1973); *Dinkins v. State,* 244 So.2d 148, 150 (Fla. Dist.Ct.App.1971); *Forbes v. State,* 559

S.W.2d 318, 321 (Tenn.1977). Second, in some circumstances, the defendant's right to a fair trial is allegedly infringed by denying an examination. *See, e.g., Benn,* 476 F.2d at 1130 n. 12; *State v. Diamond,* 553 So.2d 1185, 1190 (Fla.Dist.Ct.App.1988); *Dinkins,* 244 So.2d at 150; *State v. Buckley,* 325 N.W.2d 169, 171 (N.D.1982). Third, intelligent adjudication of a substantial challenge to witness competence requires expert testimony. *See Easterday v. State,* 254 Ind. 13, 256 N.E.2d 901, 905–06 (1970).

Likewise, three significant reasons are offered against trial judge discretion to order examinations. First, the invasion of privacy and potential for harassment created by such a discretionary power discourages victims from reporting and testifying—especially in cases of sexual offenses. *See, e.g., Benn,* 476 F.2d at 1131; *United States v. Dildy,* 39 F.R.D. 340, 343 (D.D.C. 1966); *Pickens v. State,* 675 P.2d 665, 669 (Alaska Ct.App.1984); *State v. Romero,* 94 N.M. 22, 606 P.2d 1116, 1121 (Ct.App.1980); *People v. Passenger,* 175 A.D.2d 944, 572 N.Y.S.2d 972, 972–73 (1991); *State v. Looney,* 294 N.C. 1, 240 S.E.2d 612, 627 (1978); *Buckley,* 325 N.W.2d at 171; *Forbes,* 559 S.W.2d at 322. Second, an order that a witness submit to an examination is not directly enforceable. *See, e.g., Dildy,* 39 F.R.D. at 342; *State v. Gabrielson,* 464 N.W.2d 434, 438 (Iowa 1990). Third, as there is no common law right to discovery in criminal cases, the authority for such examinations must come from a statute or rule. *See, e.g., Dildy,* 39 F.R.D. at 342; *Gabrielson,* 464 N.W.2d at 438; *State v. Liddell,* 211 Mont. 180, 685 P.2d 918, 924 (1984); *State ex rel. Holmes v. Lanford,* 764 S.W.2d 593, 594 (Tex.Ct.App.1989).

All these reasons are substantial, presenting conflicting claims of rights, which are difficult to balance. Such balancing of competing public policies is best left to the General Assembly.[1] The constitutional aura of some of these arguments and this Court's general authority over all courts compels addressing the issue on the merits.

This difficult question does not occur in a vacuum. Instead, it arises in the context of many other procedures designed to guarantee a fair trial with accurate results. Among these procedures, three are related to the right asserted by defendant in this case: the right of the defense to receive exculpatory information, the right of the defense to needed expert assistance, and the test for competency.

■ Prosecutors must disclose, even without a request, exculpatory evidence, including evidence that may be used to impeach a government witness. *See United States v. Bagley,* 473 U.S. 667, 674–77, 105 S.Ct. 3375, 3379–81, 87 L.Ed.2d 481 (1985); *Brady v. Maryland,* 373 U.S. 83, 86–89, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963); Rule 25.03(A)(9). This duty rests, in part, on the unique role of prosecutors in the criminal justice system. The prosecutor, and the entire law enforcement community, represent the state. The state's interest in the criminal trial is not in convicting the innocent but that justice be done. *See Bagley,* 473 U.S. at 675 & n. 6, 105 S.Ct. at 3380 & n. 6. In this case, this duty required the disclosure of the psychiatric record of the victim. As a result of this disclosure, defendant was able to show the jury an "Encyclopedia Brittanica" of psychological reports on the complainant, the previous apparently false reports, and a treating physician's view. It should be noted that some courts would allow the prosecution to evade this duty by never gaining "possession" of the medical record. *See United States v. Riley,* 657 F.2d 1377, 1386 (8th Cir.1981). This approach fails to rec-

---

1. Previous legislation of the General Assembly does not tilt public policy in favor of psychiatric examination. To the contrary, the legislature has granted sex-offense complainants preferred status. The rape shield law prohibits opinion and reputation evidence of the complainant's prior sexual conduct. *§ 491.015 RSMo 1986; see also State v. Brown,* 636 S.W.2d 929, 933 (Mo. banc 1982). By special statute, the state pays health-care providers for medical examinations of rape victims if: (1) the victim consents to the examination; (2) the examination is reported on a state form; and (3) the report is filed with the prosecuting attorney. *§ 191.225 RSMo 1986.*

ognize the nature of the prosecutor's role in the system.

■ Once a defendant has received the psychiatric records of a material witness similar to the complainant in this case, a second right becomes relevant. An indigent defendant has the right to have, in addition to counsel, whatever expert technical assistance counsel may need, including, in cases similar to this one, a psychiatrist. *See Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). After examining the complainant's medical records, this defense psychiatrist can assist the defense in challenging the complainant's competence and also give advice to the defense on psychiatric aspects of the case.

■ The last crucial context is the question of competency. Missouri presumes that a witness is competent to testify, except for a few statutory exceptions including mental incapacity. *§ 491.060(1) RSMo 1986; see also McCrary v. Ogden,* 267 S.W.2d 670, 672 (Mo.1954). "[A] prior adjudication of mental incompetence or a record of confinement in a mental hospital is not conclusive; a witness must exhibit some mental infirmity *and* fail to meet the traditional criteria for witness competence." *State v. Beine,* 730 S.W.2d 304, 307–08 (Mo.App.1987) (emphasis in original); *see also State v. Darty,* 619 S.W.2d 750, 751 (Mo.App.1981). If the witness is confined to a mental institution, the presumption is that the witness is incompetent; and the burden shifts to the party offering the witness to prove that the witness meets the traditional criteria for witness competence. *Beine,* 730 S.W.2d at 307; *State v. Dighera,* 617 S.W.2d 524, 526 (Mo.App.1981). A witness is competent to testify if the witness shows "(1) a present understanding of, or the ability to understand upon instruction, the obligation to speak the truth; (2) the capacity to observe the occurrence about which testimony is sought; (3) the capacity to remember the occurrence about which testimony is sought; and (4) the capacity to translate the occurrence into words." *State v. Feltrop,* 803 S.W.2d 1, 10 (Mo. banc), *cert.*

*denied,* ––– U.S. –––, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

■ If the defense believes that a witness lacks competency, a motion can be filed, as done in this case. At a hearing away from the jury, the state can present evidence, including testimony by the witness and its psychiatrist (if any), in an attempt to show that the witness is competent. The defense can present evidence, cross-examine, and call its psychiatrist (if any) to show incompetence.

■ As long as both the state and the defense are given equal access to the witness's medical records and neither side's psychiatrist has a private session with the witness, both sides are in an equivalent position. Both psychiatrists have the same authority behind their evaluations of the witness's credibility and competency. If the state's psychiatrist conducts an in-person examination, and the defense does not, the trial judge may exclude the state psychiatrist from testifying about the witness's mental condition. *See State v. Zeh,* 31 Ohio St.3d 99, 509 N.E.2d 414, 418 (1987).

■ In this case, all of the psychiatric testimony came from the defense. As such, the general rules governing disclosure, competency, and the defendant's right to necessary assistance sufficiently protected the defendant's right to a fair trial. As the expansion of the discovery process that defendant requests is not required by constitution, statute, or rule, arguments for this expansion properly belong in the General Assembly, not this Court. Therefore, this Court holds that trial courts are without authority to order witnesses to submit to psychiatric examinations.

## II.

■ Determination of competency of a witness to give testimony is for the discretion of the trial court and will not be reversed except for clear abuse. *Feltrop,* 803 S.W.2d at 10; *State v. Robertson,* 480 S.W.2d 845, 846 (Mo.1972).

The circuit judge in this case proceeded properly. A hearing was held before trial to determine competency of the witness. The complainant testified that she knew the difference between telling the truth and telling a lie, and that she would not lie. She described her mental condition, including having delusions and hearing voices, though she stated she was not hearing voices at the time of testifying. Defense counsel examined her as to her medication, which did not affect memory. No abuse of discretion appears in this case.

The circuit judge properly overruled the motion for a psychiatric examination of the complainant, and the motion to exclude her testimony.

## III.

In Points II and III, defendant attacks the sufficiency of the evidence to support the convictions. This Court's role is limited to viewing the evidence favorably to the verdict, along with all reasonable inferences from the evidence, while disregarding contrary evidence and inferences. *State v. Mallett*, 732 S.W.2d 527, 530 (Mo. banc), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). Based on the complainant's testimony and the corroborating police and physical evidence, there is sufficient evidence to support the convictions.

## IV.

Defendant neither briefs nor argues any post-conviction issues from his Rule 29.15 motion, the overruling of which is affirmed. Rule 30.20; *O'Neal v. State*, 766 S.W.2d 91 (Mo. banc 1989).

The judgment is affirmed.

ROBERTSON, C.J., COVINGTON, HOLSTEIN, THOMAS, and PRICE, JJ., and CROW, Special Judge, concur.