STATE of Missouri, Respondent,

v.

Lou R. MARTINEAU, Appellant.

Lou R. MARTINEAU, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 19271, 20546.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 8, 1996.

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

A jury found Appellant, Lou R. Martineau, guilty of sodomy, § 566.060.3, RSMo Cum. Supp.1992, and assessed punishment at fifteen years' imprisonment. The trial court

entered judgment per the verdict. Appellant brings appeal 19271 from that judgment.

While that appeal was pending, Appellant filed a motion to vacate the judgment and sentence per Rule 29.15.[1] The motion court denied relief after an evidentiary hearing. Appellant brings appeal 20546 from that order.

We consolidated the appeals, Rule 29.15(*l*), but address them separately in this opinion.

### Appeal 19271

The first of Appellant's two points relied on pertains to this appeal. It avers the trial court erred in allowing the victim to testify in that the victim "lacked the ability to accurately observe events and to retain an independent recollection of events."

The victim was thirteen years of age at time of trial.[2] The information alleged the crime occurred during "the spring of 1993." The victim's testimony included this:

"Q  Has Lou Martineau ... ever touched your penis?

A  Yeah.

Q  Did that happen while he was babysitting you?

A  Yeah.

. . . .

Q  ... have you ever seen Lou Martineau's penis?

A  Yeah.

. . . .

Q  When you saw Lou's penis, did he have his pants all the way down, or were they partially down?

A  They were up.

Q  Were his pants unzipped?

A  Yeah.

Q  Tell this jury, when you saw Lou's penis, was it hanging there, or was it stuck straight out?

A  Struck straight out.

Q  What did Lou do when you saw his penis?

A  He grabbed my hand.

. . . .

Q  What did he do with your hand?

A  Made me touch it.

Q  Okay. Did you want to?

A  No.

. . . .

Q  What did you do after he was done?

A  He went into the other room.

. . . .

Q  Did he make you touch his penis more than once?

A  Yeah.

Q  Did he touch your penis more than once?

A  Yeah."

Before the victim testified, the trial court conducted a hearing on the competency issue. Eileen Johnson, called as a witness by Appellant, testified she coordinates special education services for the school system attended by the victim. A "diagnostic summary" showed the victim "qualifies as mildly mentally retarded, but he's at the upper range, the borderline range." He has a "full scale IQ" of 72. In his "daily living skills, socialization, and communication," the victim's "adaptive level" is "[s]omewhere around two or three years below his chronological age." However, Ms. Johnson's testimony also included this:

"Q  Is [the victim] particularly subject to being influenced by other people?

A  No. He's fairly independent."

The victim also testified at the competency hearing. He recounted he was in the sixth grade, knew his place of residence and his teacher's name, knew the difference between right and wrong, and knew a lie is "[s]omething you say that's not true." He promised that everything he would tell the jury would be true and he would not lie. He understood

1.  Rule references are to Missouri Rules of Criminal Procedure (1994). That is because Appellant was sentenced January 3, 1994, and his motion for post-conviction relief was filed June 13, 1994. The current (1996) version of Rule 29.15(m) provides that in such circumstances, post-conviction relief is governed by the version of Rule 29.15 in effect when the motion for post-conviction relief was filed.

2.  Trial occurred November 23, 1993.

the trial was about "[s]exual abuse" that occurred at the trailer park where he lived. He recalled he got a basketball goal the past Christmas (1992) and the abuse occurred after he got the goal.

On cross-examination at the competency hearing, the victim testified he recalled talking to Patrick Knapp (an investigator for Appellant's lawyer) and a college student accompanying Knapp. Asked whether he told them the truth about what happened, the victim responded, "Not really." Asked why, the victim replied, "Because I was confused ... [by] ... [t]he way they talked to me about it." The victim further testified that after the Knapp interview, his parents told him he was confused and did not remember everything. The victim did not know he failed to remember everything until his parents told him.

At the conclusion of the competency hearing, the trial court ruled:

> "[T]he evidence I heard was that he's maybe two or three years below mentally, and he's 13 now. And if a ten year old alleged sexual abuse, and they met the other requirements, I would allow them to testify. So I'm going to overrule [the] request [to exclude the victim's testimony]."

The victim's trial testimony containing his account of Appellant's crime is quoted *supra*. In addition to that, the victim also told the jury he met Appellant when Appellant, a friend of the victim's parents, "came to our house." Appellant gave the victim money, bought him a pair of tennis shoes, and gave him a Batman doll. The victim learned from "Channel One" at school that if someone touches his penis, he should "[g]et away from them." The victim further recalled his parents were not home when the crime occurred.

Concerning the Knapp interview, the victim, under cross-examination at trial, testified he told Knapp about an incident in which Appellant tried to get the victim to touch Appellant's "privates." The incident occurred "at the lake" in Oklahoma. The victim also recalled telling Knapp about Appellant touching the victim's "privacy" while Appellant, the victim, and one of the victim's brothers were "wrestling." The victim did not tell Knapp about the incident upon which the prosecution was based.

█ A witness is competent to testify if the witness shows: (1) a present understanding of, or the ability to understand upon instruction, the obligation to speak the truth; (2) the capacity to observe the occurrence about which testimony is sought; (3) the capacity to remember the occurrence about which testimony is sought; and (4) the capacity to translate the occurrence into words. *State v. Robinson*, 835 S.W.2d 303, 307 (Mo. banc 1992). Determination of competency of a witness to give testimony is for the discretion of the trial court, and its decision will not be reversed except for clear abuse. *Id.* at [10].

As reported earlier, Appellant's point relied on avers the victim "lacked the ability to accurately observe events and to retain an independent recollection of events." That appears to be a claim that the victim did not satisfy requirements 2 and 3 of the *Robinson* test in the preceding paragraph.

However, the argument following the point develops no support for the contention that the victim was deficient under requirement 2. Instead, the argument asserts: "It was clear from [the] evidence that [the victim] lacked the capacity to accurately recall and relate the events for which he was being called to testify." That appears to be a claim that the victim did not satisfy requirements 3 and 4.

We first consider requirement 3.

█ Citing *State v. Johnson*, 851 S.W.2d 547, 549[2] (Mo.App. W.D.1993), Appellant asserts that in determining whether the trial court's decision to allow the victim to testify was an abuse of discretion, we must review both the evidence at the competency hearing and the victim's trial testimony. Appellant maintains that because the victim told Knapp about the incident at the lake and the wrestling episode, but failed to tell Knapp about the incident on which the prosecution was based, and because the victim did not realize he had omitted the latter incident until his parents told him so, the victim "did not independently recall the events."

In weighing that contention, we note that Ted Meador, a deputy sheriff, testified he interrogated Appellant. According to Meador, Appellant revealed he and the victim had fondled each other several times. Meador's testimony:

"Q [D]id you ask him what he did after he got through fondling [the victim], and after [the victim] was through fondling him?

A Yes, sir.

Q What did he tell you in his own words?

A In his own words, that he went to the bathroom and finished himself off.

Q And what did you say?

A I asked him what did he mean by finishing himself off.

Q What was his response?

A That he played with himself; he made himself ejaculate."

That revelation coincided with the victim's trial testimony that after Appellant made the victim touch Appellant's penis, Appellant "went into the other room."

Furthermore, the victim demonstrated the capacity to remember the incident when asked by the prosecutor whether Appellant's pants were "all the way down" or "partially down." As we have seen, the victim did not agree with either hypothesis. Instead, he replied, "They were up."

The victim's testimony, coupled with Ms. Johnson's testimony that the victim is not subject to being influenced by other people, but instead is fairly independent, constitutes substantial evidence that the victim could remember the incident on which the prosecution was based. Although the victim did not tell Knapp about the incident, the victim attributed the omission to the way Knapp

and his companion talked to him. In that regard, the prosecutor's cross-examination of Knapp at trial demonstrated that some of the questions Knapp asked the victim were lengthy and confusing.[3]

We hold the record, in toto, is sufficient to support a finding by the trial court that the victim had the capacity to remember the occurrence for which Appellant was prosecuted (requirement 3 of the *Robinson* test, 835 S.W.2d at 307).

With respect to the requirement that the victim have capacity to translate the occurrence into words (requirement 4), we observed earlier that this issue was raised only in the argument following Appellant's first point, not in the point itself.

An appellate court reviews only issues raised in the points relied on in an appellant's brief. *State v. Crenshaw,* 852 S.W.2d 181, 185[4] n. 4 (Mo.App. S.D.1993); *State v. Adams,* 808 S.W.2d 925, 930[3] (Mo. App. S.D.1991). Consequently, no issue regarding requirement 4 is presented for review. However, had the issue been raised in the point relied on, it would have been futile. The record amply demonstrates the victim had the capacity to translate the occurrence into words. Appellant's contention that the record shows the victim could not independently relate the occurrence is meritless.

We hold the trial court did not abuse its discretion in allowing the victim to testify. Appellant's first point is denied, and the judgment is affirmed.

### Appeal 20546

Appellant's second point, the only one pertinent to this appeal, claims he received ineffective assistance of counsel from the lawyer who represented him in the trial court. We

---

3. Three such questions were:

"Okay, do you know—did she say why she was—of all the things that she could have asked you, did she say why she asked you that, that question in particular? Anything you had been doing, or what made her ask you that question?

Okay, well, do you remember, did your mom say, you know, she could have asked you did you see a flying saucer, you know, do you know who's playing in the World Series. But she know—you know, she asked you that ques-

tion. You know, has Lou done anything to you. Do you know what you had been doing, or what you had been saying to her to have her ask you that question?

Sometimes when people ask something, like we call it leading questions, they ask you if something happened, and then you say yes or no. When your parents came home and asked you if Lou had touched you, you kind of think that you wanted them—you say that they wanted you to say yes."

henceforth refer to that lawyer as "defense counsel."

The claim of ineffective assistance is set forth in an amended motion for post-conviction relief filed for Appellant by the lawyer who represented him in the motion court. It reads:

"[Defense] counsel failed to investigate movant's allegations that movant had threatened to report the victim's parents for welfare fraud, and that this was their motivation in furthering the story of the abuse of the victim by movant...."

Testifying in the motion court, Appellant avowed he became acquainted with the victim's parents in a bar where he worked. The parents came there regularly, i.e., "three, four times a week," and always stayed several hours. Appellant recounted that the parents became angry at him when he "broke up" with his "girlfriend," whereupon Appellant threatened "to turn them in to welfare." Appellant explained that the parents spent "about a hundred dollars a night" in the bar, that when he was at their home there was "nothing in the refrigerator for the kids to eat," and that the victim's father was working as a mechanic and receiving pay "underneath the table so it wouldn't hurt his welfare."

According to Appellant, the "charges" were filed against him about three days after he threatened to expose the parents. Appellant swore he told defense counsel about this, but defense counsel replied, "Well, we can't get into that."

Appellant was the only witness in the motion court. Neither side called defense counsel.

The motion court adopted, without change, a set of findings of fact and conclusions of law tendered by the prosecutor. No finding or conclusion specifically addresses the claim of ineffective assistance in issue here. However, Appellant does not contend we should remand the post-conviction action to the motion court for precise findings. As explained *infra*, we conclude that procedure is unnecessary.

■ Credibility of witnesses in post-conviction proceedings is for the motion court's determination. *State v. Duckett*, 849 S.W.2d 300, 306[8] (Mo.App. S.D.1993); *State v. Tubbs*, 806 S.W.2d 746, 749[8] (Mo.App. S.D. 1991). Consequently, the motion court was not required to believe Appellant's testimony about the parents' misdeeds and his threat to report them to welfare officials. *Keating v. State*, 870 S.W.2d 273, 275[2] (Mo.App. S.D. 1994); *Moore v. State*, 853 S.W.2d 378, 380[5] (Mo.App. S.D.1993). If the motion court rejected Appellant's testimony as unworthy of belief, Appellant's claim of ineffective assistance fails for lack of evidentiary support.

■ However, assuming *arguendo* that Appellant's testimony was true, it does not establish ineffective assistance. Neither parent testified for the prosecution, hence defense counsel had no occasion to try to impeach either of them. Therefore, even if the parents' credibility could have been assailed by showing they were peeved at Appellant over the alleged welfare threat, the need to do so never arose.

On the contrary, defense counsel called the victim's mother as a witness for *Appellant* at trial. By the mother's testimony, defense counsel sought to establish that after December, 1992, she and her husband never left the victim with Appellant. Obviously, defense counsel's objective was to discredit the victim's testimony that the crime occurred after he received the basketball goal at Christmas.

Nothing in the record suggests that either parent goaded law enforcement officials to prosecute Appellant. The record demonstrates that the prosecution was undertaken because of what the victim and Appellant told the investigators, not on any agitation or prodding by the victim's parents. Appellant identifies no evidence available to defense counsel that would have indicated the "charges" were filed because the victim's parents were angry about the alleged welfare threat.

The victim's mother testified she was shocked when the victim told her about Appellant's conduct. She called the "hot line," whereupon Cathy Gorham, an investigator for the Division of Family Services, and deputy Meador came to the home and interviewed the victim. The mother was not pres-

ent during the interview. The record is bare of any hint that either parent orchestrated the victim's account of Appellant's misdeeds.

■ To prevail on a claim of ineffective assistance of counsel, a prisoner must show (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, and (2) the prisoner was thereby prejudiced. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). Failure to demonstrate prejudice is fatal to a claim of ineffective assistance. *Id.*

The motion court made a generic finding that Appellant was not prejudiced by any act of defense counsel complained about by Appellant. We agree with that finding in regard to the claim of ineffective assistance in Appellant's point relied on in this appeal.

■ The findings and conclusions of a motion court in a postconviction proceeding are sufficient if they permit review of its judgment. *Gilliland v. State,* 882 S.W.2d 322, 326[8] (Mo.App. S.D.1994; *Robertson v. State,* 851 S.W.2d 74, 76[1] (Mo.App. S.D. 1993)). Where, as here, the correctness of the motion court's action is clear from the record, there is no need to remand for additional findings and conclusions. *Gilliland,* 882 S.W.2d at 326[9]; *State v. Brewster,* 836 S.W.2d 9, 14[5] (Mo.App. E.D.1992).

Appellant's second point is denied, and the order of the motion court is affirmed.

MONTGOMERY C.J., and SHRUM, J., concur.