Richard KREUTZ, Sr., Surviving Father of Richard Kreutz, Jr., Deceased, and Susan Kreutz, Surviving Mother of Richard Kreutz, Jr., Deceased, Appellants,

v.

CURATORS OF the UNIVERSITY OF MISSOURI, et al., Respondents.

No. WD 72964.

Missouri Court of Appeals, Western District.

Dec. 13, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 31, 2012.

Application for Transfer Denied May 1, 2012.

Leonard Cervantes, St. Louis, MO, for Appellants.

Sara Obermark, St. Louis, MO, for Respondents, Ordways and Life Christian.

Colly Durley, Columbia, MO, for Respondent, Kraatz.

Before: ALOK AHUJA, P.J., THOMAS H. NEWTON, and JAMES EDWARD WELSH, JJ.

THOMAS H. NEWTON, Judge.

Mr. Richard Kreutz, Sr., and Mrs. Susan Kreutz appeal the dismissal of their petition seeking damages for the wrongful death of their son, Mr. Richard Kreutz, Jr. The trial court dismissed the Kreutzes' petition because the health care affidavits required to be filed with the petition by section 538.225 failed to comply with the statute in that the doctor opining that the defendant health care providers breached the standard of care, was not a "legally qualified health care provider," as defined by the statute. Additionally, the trial court dismissed the petition against The Board of Curators of the University of Missouri (the Board) on the ground of sovereign immunity. We affirm.

## Factual and Procedural Background

The following facts were taken from the petition. On November 27, 2006, Mr. Kreutz, Jr., a mentally impaired man, was treated for burns on his hands at University Hospital in Columbia, Missouri. Dr. James Kraatz, the treating physician, debrided[1] the burns and gave him morphine for the pain. The hospital released him to the care of personnel at Lighthouse Group Home, where he lived. The following afternoon, Mr. Kreutz, Jr., was found unresponsive with shallow respiration. An unconscious Mr. Kreutz, Jr., was readmitted to University Hospital with respiratory

---

1. *Debride* means to remove "foreign material and devitalized tissue from a wound." BLAKI- STON'S GOULD MEDICAL DICTIONARY 359 4th ed. (1979).

failure. His condition deteriorated; he was diagnosed with anoxic ischemia and drug exposure/poisoning. He was transported to a hospital in St. Louis, near the Kreutzes, that specialized in rehabilitation for ventilator weaning. A little over a month later, Mr. Kreutz, Jr., was unresponsive and pulseless. He was declared dead on January 23, 2007; the cause of death was "complications of hypoxic encephalopathy [loss of oxygen to the brain] following debridement of thermal burns."

On January 7, 2010, the Kreutzes filed their petition for damages for wrongful death against Dr. Kraatz; the Board d/b/a University Hospital; Life Christian Outreach, Inc., the company operating the group home; and its owners Linda Ordway and Greg Ordway d/b/a WW Country Home and Lighthouse Group Home (collectively "the Defendants"). The Kreutzes' attorney filed affidavits pursuant to section 538.225,[2] alleging that he had obtained the written opinion of Dr. Richard Payne, the pathologist who performed the autopsy of Mr. Kreutz, asserting that each defendant failed "to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the Petition."

The Defendants filed motions to strike the affidavits because they did not meet the standards set forth in section 538.225. They alleged that Dr. Payne did not meet the statutory criteria of a "legally qualified health care provider" because he was not actively practicing and had not actively practiced within five years of retirement "substantially the same specialty" as Dr. Kraatz, a surgeon, or Life Christian Outreach, Inc., a group home for the mentally disabled. The Kreutzes filed an affidavit by Dr. Payne explaining his experience with and knowledge of the administration of morphine. The court struck the health care affidavits, and the Defendants filed motions to dismiss for failure to file the required health care affidavits. The Board also sought dismissal as a defendant under the doctrine of sovereign immunity. The motion court dismissed the petition without prejudice[3] for failure to comply with section 538.225 and, as to the Board, on the ground of sovereign immunity. The Kreutzes appeal.

### Standard of Review

■ Whether a health care affidavit complies with section 538.225 is a question of law, which we review *de novo*. *Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 686 (Mo. banc 2010). In our review, we consider the plain meaning of the language used to discern the legislature's intent. *Id.* Whether sovereign im-

---

**2.** Section 538.225.1 states:

In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable

care directly caused or directly contributed to cause the damages claimed in the petition.

Statutory references are to RSMo 2000 and the Cumulative Supplement 2010.

**3.** "[A] dismissal without prejudice for failure to comply with section 538.225 is an appealable judgment." *See Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 686 n. 4 (Mo. banc 2010) (citing *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 506 (Mo. banc 1991)).

munity applies to a defendant is also a question of law to be reviewed *de novo.* See *Ogden v. Iowa Tribe of Kan. & Neb.,* 250 S.W.3d 822, 824 (Mo.App. W.D.2008).

## Legal Analysis

■ In their first point, the Kreutzes argue that the trial court erred in striking the section 538.225 affidavits and in dismissing the petition because Dr. Payne was a "legally qualified health care provider" in that he was practicing "substantially the same specialty" as the Defendants. They argue that Dr. Payne was legally qualified because the issue in the case involved the administration and monitoring of medicine, which Dr. Payne had experience with as a medical doctor. The Kreutzes rely on *Spradling.* Their reliance is misplaced.

Section 538.225.2 states, " 'legally qualified health care provider' shall mean a health care provider licensed in this state or any other state in the same profession as the defendant and either actively practicing or within five years of retirement from actively practicing substantially the same specialty as the defendant." Recently, the Missouri Supreme Court interpreted "substantially the same specialty as the defendant" to include doctors who may not share the same board certification as the defendant doctor but perform the same procedure as the defendant doctor. *Spradling,* 313 S.W.3d at 689. According to the supreme court, a physician could be of "substantially the same specialty" if he had

"an expertise in the medical procedure at issue," whatever his specific certifications or lack thereof. *Id.* The doctor providing an opinion of a breach of the standard of care causing the plaintiff's damages in the healthcare affidavit in *Spradling* met this standard because he was actively performing the procedure at issue, vertebroplasty, although he was not certified in the same medical specialty as the defendant doctor. *Id.*

The legislature requires that the healthcare provider actively practice under similar circumstances in order to provide an opinion that a defendant doctor breached the necessary standard of care in the profession and thereby caused a plaintiff's pleaded damages, and we must give effect to that intent. *See Spradling,* 313 S.W.3d at 688. In his affidavit, Dr. Payne claims that he knows a patient should be monitored after receiving morphine from his experience with the toxicity of morphine and knowledge of the administration of morphine, but he does not allege that he actively administered morphine or that he had retired from doing so within the previous five years. Because he was not actively practicing, or within five years of retiring from practicing, the administration of morphine or the post-administration monitoring of patients, Dr. Payne was not a legally qualified health care provider. The trial court did not err in striking the affidavits or dismissing the petition for failure to file the mandatory health care affidavits. The Kreutzes' first point is denied.[4]

4. The Kreutzes argue in the alternative that an affidavit was not required to maintain an action against Life Christian Outreach because it was not a health care provider or a provider of health care service as defined in section 538.205. This argument was not in the point relied on, so we do not need to address it. *State v. Martineau,* 932 S.W.2d 829, 833 (Mo.App. S.D.1996). Even if we were to address the merits, the Kreutzes

would not prevail. In the trial court, the Kreutzes' only argument was that Life Christian Outreach had not provided "health care services" to Richard Kreutz, Jr. within the meaning of section 538.205(5), because Life Christian Outreach "was not incorporated under the laws of the State of Missouri with a purpose of providing 'health care' or 'health care services.' " However, the purposes for which Life Christian Outreach was organized

In their second point, the Kreutzes argue that the trial court erred in granting the Board's motion to dismiss on the ground of sovereign immunity because they alleged "that Defendant Curators directed and/or encouraged its agents, servants and/or employees including Defendant Kraatz to prematurely discharge decedent from its hospital," thereby contributing to his death. The Kreutzes argue that this allegation precludes dismissal according to *State ex rel. Green v. Neill,* 127 S.W.3d 677, 679 (Mo. banc 2004). The Kreutzes reliance on *Green* is misplaced.

■ The Board is considered a governmental body and is therefore immune from tort liability absent an express statutory provision. *Langley v. Curators of the Univ. of Mo.,* 73 S.W.3d 808 (Mo.App. W.D.2002) (applying section 537.600). The *Green* court explained that an individual curator as a public officer is not liable for the acts of a subordinate employee unless the curator as a public officer "directed, encouraged, ratified or personally cooperated in the allegedly tortious conduct." 127 S.W.3d at 679 (internal quotation marks and citation omitted). The *Green* court determined that although the petitioner had sued an individual curator as a defendant, the joinder was pretensive (for venue purposes) because no allegations were made that would support a finding that the curator was liable as a public officer for the negligence of the subordinate hospital staff. *Id.*

*Green* does not apply here because the Kreutzes did not sue the members of the Board individually. Rather, they sued the governmental body, which is immune from tort liability. The trial court did not err in disregarding the conclusory allegation. *See Hendricks v. Curators of Univ. of Mo.,* 308 S.W.3d 740, 747 (Mo.App. W.D.2010). Accordingly, we deny the Kreutzes' second point.

**Conclusion**

For the foregoing reasons, we affirm.

AHUJA, P.J., and WELSH, J. concur.

include providing "true morally formed benevolence and charity and to benefit the poor, the sick, and all other members of the community." Consistent with this purpose, the Kreutzes' First Amended Petition alleges that Life Christian Outreach operated and managed "group homes for persons with disabilities." The Kreutzes alleged that Life Christian Outreach was negligent for failing to properly monitor Richard Kreutz, Jr. following his burn treatment, failing to promptly address his respiratory distress and properly train its employees to do so, and failing to attempt to resuscitate or intubate Richard Kreutz, Jr. These allegations plainly fall within Life Christian Outreach's purposes, and the definition of "health care services" in section 538.205(5). Finally, although the Kreutzes now raise an argument concerning Life Christian Outreach's licensure or certification, the Kreutzes made no such argument below, and we decline to address it.