Patricia CAPLINGER, Appellant,

v.

Salim RAHMAN, M.D. and Salim Rahman, M.D., L.L.C., Respondents.

No. SD 34820

Missouri Court of Appeals,
Southern District,
en banc.

FILED: August 14, 2017

Application for Transfer Denied
August 25, 2017

Application for Transfer to Supreme
Court Denied October 31, 2017

Appellant's attorneys: Steven J. Blair, Springfield, Sabre N. Weathers & Jeremy D. West, Oklahoma City, OK.

Respondent's attorneys: Brian D. Malkmus & Alex C. Riley, Springfield.

DANIEL E. SCOTT, J.

A medical malpractice plaintiff must obtain an opinion of merit from a "legally qualified health care provider," then file timely notice thereof by affidavit, all in accordance with § 538.225 procedure.[1] The statute offers an opportunity to overcome opinion deficiencies (subsection 7), but the notice requirement (subsection 6) is strictly construed. Unless a compliant

---

1. Statutory citations are RSMo as amended through 2016. We quote § 538.225's seven subsections verbatim:

1. In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

2. As used in this section, the term "legally qualified health care provider" shall mean a health care provider licensed in this state or any other state in the same profession as the defendant and either actively practicing or within five years of retirement from actively practicing substantially the same specialty as the defendant.

3. The affidavit shall state the name, address, and qualifications of such health care providers to offer such opinion.

4. A separate affidavit shall be filed for each defendant named in the petition.

5. Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended for a period of time not to exceed an additional ninety days.

6. If the plaintiff or his attorney fails to file such affidavit the court shall, upon motion of any party, dismiss the action against such moving party without prejudice.

7. Within one hundred eighty days after the filing of the petition, any defendant may file a motion to have the court examine in camera the aforesaid opinion and if the court determines that the opinion fails to meet the requirements of this section, then the court shall conduct a hearing within thirty days to determine whether there is probable cause to believe that one or more qualified and competent health care providers will testify that the plaintiff was injured due to medical negligence by a defendant. If the court finds that there is no such probable cause, the court shall dismiss the petition and hold the plaintiff responsible for the payment of the defendant's reasonable attorney fees and costs.

affidavit is timely filed, the case must be dismissed without prejudice. *See, e.g., Lang v. Goldsworthy*, 470 S.W.3d 748 (Mo. banc 2015); *Mayes v. Saint Luke's Hosp.*, 430 S.W.3d 260 (Mo. banc 2014); *Austin v. Schiro*, 466 S.W.3d 694 (Mo.App. W.D. 2015).

Plaintiff's attorney obtained an opinion from Dr. Ronnie Keith and timely filed a notice affidavit in statutory form.[2] Upon Defendant's motion, the trial court reviewed the opinion and considered further evidence from Plaintiff, found that Dr. Keith did not practice substantially the same specialty as Defendant (subsection 2), deemed this a subsection 6 affidavit defect, and dismissed the case without prejudice because the notice deadline had passed.

Plaintiff appeals, complaining that Dr. Keith did practice substantially the same specialty as Defendant, but if not, subsection 7 governed and did not mandate dismissal.[3]

Our review is *de novo. Austin*, 466 S.W.3d at 696. We deny Plaintiff's first complaint, but agree with the second and decline to follow *Kreutz v. Curators of Univ. of Missouri*, 363 S.W.3d 61 (Mo. App. W.D. 2011), to the extent it suggests otherwise. We reverse the judgment of dismissal and remand for further proceedings.

### The Statute

Section 538.225's first five subsections establish two requisites for maintaining a medical malpractice action. In temporal order, these are:

1. An expert opinion that meets four requirements set by subsection 1:
 - a written opinion,
 - of a legally qualified health care provider (defined in subsection 2),
 - that the defendant was negligent, and
 - such negligence proximately caused the plaintiff's alleged damages.

2. Timely sworn notice that meets the form and timing requirements of subsections 1 and 3-5:
 - an affidavit by the plaintiff or the plaintiff's attorney,
 - stating that he or she has obtained the aforesaid opinion,
 - and the expert's name, address, and qualifications to offer such opinion,
 - filed with the court within 90 days after the petition or a court-granted extension of up to 90 additional days.

Subsection 6 governs affidavit violations and mandates dismissal without prejudice if the notice deadline has passed.

Finally, under subsection 7, which "governs when the alleged error is the expert's written opinion,"[4]

if the court determines that the opinion fails to meet the requirements of this section, then the court shall conduct a hearing within thirty days to determine whether there is probable cause to be-

---

**2.** We refer to Appellant as "Plaintiff" and to Respondents collectively as "Defendant."

**3.** A § 538.225 dismissal without prejudice "is an appealable judgment." *Austin*, 466 S.W.3d at 696. As appears to be the case here, limitations may influence a decision to appeal rather than refile. *See Mayes*, 430 S.W.3d at 273

n.20; *White v. Tariq*, 299 S.W.3d 1, 5 (Mo. App. E.D. 2009). For ease of analysis, we have reversed the order of Plaintiff's complaints on appeal.

**4.** *Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 686 n.3 (Mo. banc 2010).

lieve that one or more qualified and competent health care providers will testify that the plaintiff was injured due to medical negligence by a defendant.

§ 538.225.7. If the court finds no such probable cause, it must dismiss the case. *Id*.

### "Substantially the Same Specialty"

The central question below was whether Dr. Keith practiced "substantially the same specialty" as Defendant. Section 538.225 requires an opinion of merit from a "legally qualified health care provider" (subsection 1), which subsection 2 defines in part as one actively or recently "practicing substantially the same specialty as the defendant." *Spradling* and *Kreutz* are the key and perhaps only cases to have examined this requirement of substantially-same specialty.

#### *Spradling*

The *Spradling* plaintiffs sued a neurosurgeon for negligent vertebroplasty surgery, then filed a notice affidavit citing an opinion of merit from a radiologist. The neurosurgeon moved to dismiss, claiming a failed notice affidavit because the radiologist did not practice "substantially the same specialty" and thus could not be a "legally qualified health care provider." To rebut the motion, the plaintiffs submitted the radiologist's CV and follow-up affidavit showing he had performed or assisted in more than 3,000 vertebroplasties and still actively performed them. Our supreme court reversed the trial court's dismissal, holding that "substantially the same specialty" could be met by board certification *or* by expertise or experience in the medical procedure at issue. 313 S.W.3d at 685, 689-90.

#### *Kreutz*

The *Kreutz* plaintiffs sued a surgeon; their notice affidavit cited an opinion of merit from a pathologist. As in *Spradling*, the surgeon claimed that the pathologist did not practice "substantially the same specialty" and sought dismissal for a notice-affidavit violation; the plaintiffs countered with the pathologist's follow-up affidavit regarding his experience; but the trial court still dismissed the case. The Western District found the pathologist's follow-up affidavit, which indicated his general understanding that patients on morphine should be monitored, but apparently did not show that he had ever administered morphine himself, was insufficient to meet *Spradling*'s standard, and thus declared that the pathologist "was not a legally qualified health care provider. The trial court did not err in striking the affidavits or dismissing the petition for failure to file the mandatory health care affidavits." 363 S.W.3d at 64.

### This Case

Defendant applied a biologic bone-growth stimulant during spinal surgery on Plaintiff, who developed exuberant bone growth and other complications. She sued, alleging that Defendant used the biologic in a non-approved manner and without Plaintiff's informed consent.

Plaintiff's counsel timely filed a § 538.225 affidavit stating that he had

> obtained a written opinion of a legally qualified healthcare provider, stating the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have used under similar circumstances in the care/treatment of Patricia Caplinger, and that the failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in said Petition.

The opining doctor was identified as "Ronnie Keith, D.O., F.A.C.O.S., who is Board

Certified in General Surgery, and is actively practicing laparoscopic, general and weight loss surgery" at a stated Oklahoma address.

Consistent with *Kreutz*, Defendant moved to dismiss for failure to file a proper § 538.225 affidavit. At the motion hearing, Plaintiff tendered and the court reviewed *in camera* Dr. Keith's opinion letter and his follow-up affidavit, then announced that "the Court is not persuaded that Dr. Keith's *opinion* [our emphasis] meets the requirements of section 538.225" because "I don't find, based on what I've been provided thus far, that Dr. Keith practices in the same specialty or has the requisite experience with that procedure and with that product." At the court's invitation, Plaintiff requested and the court ordered a subsection 7 probable cause hearing over Defendant's objection.

Plaintiff did not call Dr. Keith to testify at the probable cause hearing, but offered testimony from Dr. Thomas Beatty, a practicing neurosurgeon.[5] Dr. Beatty testified to his experience with the procedure and biologic at issue; that Defendant violated the standard of care and Plaintiff was injured thereby; and that Dr. Beatty would so testify at trial. At the hearing's conclusion, the court invited further briefing on *Kreutz* and took the matter under advisement.

Three weeks later, citing *Kreutz* and *Spradling*, the court entered a judgment of dismissal stating that Dr. Keith did not practice substantially the same specialty as Defendant, so he was not a legally qualified health care provider, thus the affidavit was "deficient and not in compliance with [subsection 1]" and subsection 6 "would appear to mandate dismissal." The court also rejected Plaintiff's claim to have satisfied subsection 7 when Dr. Beatty (a "qualified and competent health care provider" in the court's words) testified that he would serve as Plaintiff's expert. Rather, the court reasoned that any trial experts identified and found qualified at a probable cause hearing "must be the same person(s) previously identified in Plaintiff's health care affidavit" to avoid frustrating the statute's purpose. Accordingly, the court struck Plaintiff's affidavit and dismissed her claims without prejudice.

### Dr. Keith's Qualification

■ We reject Plaintiff's challenge to the court's finding that Dr. Keith did not practice "substantially the same specialty" as Defendant. This case is much more like *Kreutz* (with which we disagree only as to remedy, see *infra*) than *Spradling*.

In *Spradling*, the opining doctor's follow-up affidavit established his expertise and considerable experience in the specific medical procedure at issue. In contrast, Dr. Keith's follow-up affidavit, like the one in *Kreutz*, did not establish expertise or any experience in the medical procedure at issue. Further, Plaintiff's witness Dr. Beatty expressed doubt that Dr. Keith had neurosurgical hospital privileges; had ever performed or had experience with the procedure at issue; or had ever handled informed consent for such a patient. Point denied.

---

5. Earlier, Defendant's counsel had described Dr. Beatty as the expert that Plaintiff "wish[ed] they had in their affidavit," in which case "we would have no grounds to even have a motion to dismiss." Plaintiff's counsel told the court that as he read the statute, an expert other than Dr. Keith should testify because a precondition to the probable cause hearing was the court's finding that Dr. Keith did not meet statutory requirements. Neither side knew of any Missouri case on whether "qualified and competent health care providers" testifying at a subsection 7 probable cause hearing must be or include the expert named in the subsection 1 notice affidavit.

### Remedy

■ *Spradling* and *Kreutz* focused on whether the opining doctor practiced "substantially the same specialty as the defendant." We have not found or been cited to any case that analyzes whether Dr. Keith's non-qualification should be statutorily viewed and treated as an opinion flaw under subsection 7 vs. an affidavit defect under subsection 6. Absent meaningful precedent or analysis, we will largely follow our supreme court's lead in *Spradling*. We will read undefined statutory text plainly, consider and harmonize all § 538.225 subsections to give effect to the legislature's intent, and determine whether the statute's grammatical construction supports any conclusion we reach. *See* 313 S.W.3d at 687-88.

Defendant urges that the court ruled properly because Plaintiff did not show that Dr. Keith practiced "substantially the same specialty" as Defendant and thus did not show that Dr. Keith was a "legally qualified health care provider," repeatedly emphasizing Plaintiff's evidentiary failure to establish Dr. Keith's qualification per *Spradling*. This begs the question of *remedy*. Defendant's unstated reasoning, and that of the trial courts in *Spradling*, *Kreutz*, and here, seems to be one of "imputed defect" or deficiency by association. We cannot see, and no one explains, how this does not render subsection 7 effectively a dead letter:

1. If such reasoning disqualifies this otherwise valid affidavit, it likewise would disqualify *any* affidavit based on *any* later-determined flaw in its referenced expert opinion (*e.g.*, causation).

2. Any and every *opinion* flaw thus would mandate subsection 6 dismissal, emasculating subsection 7's considered process for considering and addressing claims of opinion error.

3. This would violate "a cardinal rule of statutory construction that we presume the Legislature does not employ superfluous or meaningless language." *Young v. Boone Elec. Coop.*, 462 S.W.3d 783, 792 (Mo.App. W.D. 2015).

■ Courts never presume that our legislature acted uselessly and should not construe a statute to render any provision meaningless. *State v. Hall*, 321 S.W.3d 453, 455 (Mo.App. S.D. 2010) (rejecting a construction that "would render subsection three of [§ 566.083] meaningless," *id.* at 456). "The provisions of a legislative act must be construed and considered together and, if possible, all provisions must be harmonized and every clause given some meaning." *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992).

When we plainly and carefully read § 538.225's provisions in harmony with each other, giving effect to every subsection, we cannot avoid these conclusions:

1. A § 538.225 affidavit effectively is a sworn notice filing of mandated form and content that operates not wholly unlike a UCC financing statement.[6]

---

6. That is, each is a filed notice form with required content. For each, failure to timely file in proper form risks adverse consequences, yet timely filing in proper form does not insure success because the underlying security agreement (on one hand) or expert opinion (on the other) stands or falls on its own merit based on its own legal requirements.

Why would § 538.225 require a notice *affidavit*? We don't know; but perhaps because the statute allows notice to be judicially filed by lay plaintiffs not subject to a lawyer's duty of candor to the tribunal (Rule 4-3.3) and uniform requirements for all notice-givers promotes simplicity and consistency.

2. When timely filed in proper form, it triggers the defendant's time-limited subsection 7 right to question the expert opinion that it cites.

3. If *not* timely filed in proper form, the defendant may seek summary, mandatory dismissal without prejudice per subsection 6.[7]

4. Plainly read, the statutory text neither states nor suggests that opinion flaws be imputed to an otherwise proper affidavit.

5. Worse, to do so, as trial courts did here and in *Spradling* and *Kreutz*, is to render subsection 7 meaningless and of no practical or legal effect.

 Defendant's insistence that he challenged the affidavit, not the opinion cited therein, cannot withstand our review of the statute's grammatical construction. The last antecedent rule and common sense agree that "practicing substantially the same specialty" (within subsection 2's definition of "legally qualified health care provider" and found only there) does not modify the remote term "affidavit" (not found in subsection 2 at all).[8]

Likewise, when subsection 1 provides (our emphasis) that

*the plaintiff or the plaintiff's attorney shall file an affidavit* with the court stating that he or she has obtained *the written opinion of a legally qualified health care provider* which states . . . , the last antecedent rule and common sense agree that "of a legally qualified health care provider" modifies and is a condition of "the written opinion," not of the remote term "affidavit" which describes another person's document ("the plaintiff or the plaintiff's attorney").

Therefore, whether Dr. Keith practiced "substantially the same specialty as the defendant" was not a condition (or failing) of the affidavit, but of his being a "legally qualified health care provider," which in turn was not a condition (or failing) of the affidavit either, but of Dr. Keith's "written opinion." All of our analyses support this conclusion. Point granted.

### Final Matters

Subsection 7 proceedings already having been initiated at Plaintiff's behest, Defendant may assert such rights on remand despite not having filed a timely motion to do so in reasonable reliance upon *Kreutz*.

 Finally, we do not share the trial court's view, to quote the judgment, "that the 'one or more qualified and competent

7. "Prior to 2005, the statute stated that a court *may* dismiss the action if the plaintiff fails to file the affidavit." *Mayes*, 430 S.W.3d at 271. "It then was amended to require mandatory dismissal." *Id*. That amendment may warrant the recent judicial hard line about statutory affidavit requirements. But as already seen, it cannot justify imputing opinion flaws to otherwise proper affidavits so as to mandate summary dismissal under subsection 6 and render meaningless subsection 7's more extensive and considered process for addressing claims of opinion error. Had that been the legislature's goal, it could have deleted or appropriately amended subsection 7 or otherwise made its intention known, but it did none of those.

8. "Under the last antecedent rule, relative and qualitative words are to be applied only to the words or phrases preceding them. The relative and qualitative words are not to be construed as extending to or including others more remote." *Spradling*, 313 S.W.3d at 688 (citation and internal quotation marks omitted). As *Spradling* itself shows, this rule is only a general aid to construction that does not always fit. *Id*. "The best and surest test to determine whether the general rule of the last antecedent or the exception thereto is to be applied is a 'common sense interpretation.'" *Blue Cross & Blue Shield of Kansas City v. Nixon*, 26 S.W.3d 218, 234 (Mo.App. W.D. 2000).

health care providers' identified at the probable cause hearing must be the same person(s) previously identified in Plaintiff's health care affidavit." That is not what the statute says or, we believe, even suggests. We decline to express opinions on other interpretive issues not raised or briefed in this appeal and unlikely to arise on remand.

### Conclusion

We reverse the judgment of dismissal and remand for further proceedings consistent with this opinion.

NANCY STEFFEN RAHMEYER, C.J.—CONCURS

JEFFREY W. BATES, J.—CONCURS

GARY W. LYNCH, J.—CONCURS

DON E. BURRELL, J.—CONCURS

WILLIAM W. FRANCIS, JR., J.—CONCURS

MARY W. SHEFFIELD, J.—CONCURS